**Richard J. HERSCHBACH, Individually and on Behalf of Retired Fire Fighters and Benefit Recipients of the Corpus Christi Firemen's Relief and Retirement Fund, Appellants,**

v.

**CITY OF CORPUS CHRISTI and Board of Trustees of the Corpus Christi Firemen's Relief and Retirement Fund, Appellees.**

No. 13–92–673–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 25, 1994.

Rehearing Overruled Oct. 6, 1994.

Curtis B. Dyer, Corpus Christi, for appellants.

Shirley Selz, John C. Holmgreen, Jr., Gary, Thomasson, Hall & Marks, James R. Bray, Jr., City Atty., Carol Estes Bray, Asst. City Atty., Legal Dept., Corpus Christi, for appellees.

William J. Chriss, Rangel & Chriss, Kimberley Hall Seger, Seger & Allison, Corpus Christi, for intervenors.

Before DORSEY, GILBERTO HINOJOSA, and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

GILBERTO HINOJOSA, Justice.

Richard J. Herschbach, individually, and on behalf of the retired fire fighters and benefit recipients of the Corpus Christi Firemen's Relief and Retirement Fund (the Fund) brought this class-action suit alleging numerous tort and breach-of-contract claims against the City of Corpus Christi (City) and the Fund's Board of Trustees (the Board).

Appellants sought to correct alleged errors in the Fund and to recover actual and exemplary damages, costs, and attorneys fees. The City's actively employed fire fighters intervened in this suit as necessary parties.[1] The Board and the City moved separately for summary judgment, and the trial court ordered that appellants take nothing by their suit. Appellants attack the summary judgment by ten points of error. The City brings one cross-point of error. We affirm in part and reverse and remand in part.

### Nature Of The Case

In 1937, the Texas Legislature passed a law[2] creating the Firemen's Relief and Retirement Fund. This law was codified at article 6243e of the Texas Revised Civil Statutes. Section 3 provided, in relevant part:

SEC. 3. That all incorporated cities and towns in this State having a regularly organized active fire department ... the Mayor of such city or town, the city or town treasurer ... and three (3) members of such regularly organized active fire department ... shall be and are hereby constituted the "Board of Firemen's Relief and Retirement Fund Trustees" to receive, handle and control, manage, and disburse such Fund for the respective city or town. ...

In the case presently before us, the City had a fully paid fire department that participated in a Firemen's Relief and Retirement Fund. In 1973, the Legislature amended article 6243e by adding section 10A-3[3] which provided, in relevant part:

"Sec. 10A-3. (a) This section applies to all cities which have a population of two hundred ten thousand (210,000) or less according to the last preceding federal census *which adopt the provisions of this section by majority vote of the participating members of the fund and adopted by ordinance.*

"(b) A city having a Firemen's Relief and Retirement Fund shall deduct an amount equal to not less than three percent (3%) nor more than nine percent (9%) of the average monthly salary or compensation as computed in Subsection (d) of this section from each participating member's salary. ...

\*  \*  \*  \*  \*  \*

"(d) The *average monthly salary* or compensation shall be computed by dividing the total gross monthly pay for all firemen for the immediately preceding twelve (12) months by the total number of firemen paid in the immediately preceding twelve (12) months. The average monthly salary shall be recalculated each year."

(emphasis supplied). The summary judgment proof showed that section 10A-3 was adopted by the members of the Fund and by ordinance.

At its August 23, 1973, regular meeting,[4] the Board passed a motion establishing the following relevant policies pertaining to the retirement Fund in this case:

1. That the 26 bi-weekly payroll payment dates be construed to be the equivalent of a monthly payroll system on an annual basis.

2. That the average bi-weekly salary or compensation shall be computed by dividing the total gross bi-weekly pay for all firemen for the immediately preceding 26 bi-weekly payment dates by the total number of firemen paid on the immediately preceding 26 bi-weekly payment dates.

3. That contributions of firemen be deducted equally or as near equally as possible from each firemen's bi-weekly salary.

4. That the bi-weekly firemen contributions computed on the average annual bi-weekly salary of all firemen, be deducted from the bi-weekly payroll period beginning September 17, 1973.

1. The intervenors filed a separate brief in which they argued that the trial court correctly granted the City's and the Board's summary judgment motions.

2. The Act of April 9, 1937, 45th Leg., R.S., ch. 125, TEX.GEN.LAWS, 229, 229–41. (codified at TEX.REV.CIV.STAT.ANN. art. 6243e).

3. The Act of May 25, 1973, 63rd Leg., R.S., ch. 355, § 1, 1973 TEX.GEN.LAWS 794, 794–95.

4. The minutes of the Board's August 23, 1973 meeting were attached to the Board's first amended motion for summary judgment.

5. That the 26 payroll payment dates beginning with the payment date of September 8, 1972 and ending with the payment date of August 24, 1973, be established as the preceding salary year and equivalent to the period of time defined in House Bill 910 [section 10A–3] as being "the immediately preceding twelve (12) months."

6. That the City of Corpus Christi is hereby directed to make bi-weekly deducations [sic] of firemen's contributions to the Firemen's Relief and Retirement Fund in accordance with the above policies.

From 1984 to October 1986, Juan Garza served in a dual capacity as the City's Director of Finance and as Secretary-Treasurer to the Board.[5] In his latter capacity, he kept the Board's books and records, voted at Board meetings, and took part in discussion. At one point, he asked Earl Hearne to calculate the average monthly salary to be used in the 1984–1985, 1985–1986, 1986–1987 fiscal years. On October 6, 1986, Garza left the Board, and Debra Andrews became a Board member. In 1987, she wrote the Board a memorandum stating that the average monthly salary had been incorrectly calculated for the years 1984–1985, 1985–1986, and 1986–1987. In 1989, Garza decided to collect the alleged under-contributions from the active fire fighters who would have paid the money initially. However, he canceled this plan.

*Appellants' Allegations*

Appellants filed suit against the Board and the City. They alleged that article 6243e required the Board, the City, or both to administer the Fund. Pursuant to section 10A–3, the Board, the City, or both were required to annually calculate the average monthly salary of the City's fire fighters. The purpose for determining the average monthly salary was for the City, under the administration of the Board, to use that average monthly salary in calculating the amount of the contribution to the Fund that each actively employed fire fighter must make to the Fund each month pursuant to section

10A–3(b) & (c). The average monthly salary was critical in determining the amount of benefits that the Fund could have paid and is to pay in the future to benefit recipients who became entitled to receive benefits each year.

They alleged that the Board relied upon the City, specifically, its finance director, Juan Garza, who at the time in question was a Board member, to calculate the average monthly salary for the active fire-fighter employees. The crux of appellants' suit was that in the fiscal years 1983–1984, 1984–1985, 1985–1986, and 1986–1987, the City did not follow the statutorily required formula for calculating the fire fighter's average monthly salary, and in doing so, made an error in calculating the fire fighter's average monthly salary. The Board and the City misrepresented to the Fund's participants, both contributing members and benefit recipients, that the calculations were accurate. However, due to the error in calculating the average monthly salary, the City withheld from the contributing fire fighter's monthly salary, an under-contribution to the Fund of $180,000. This, in turn, caused the City's contribution to the Fund to fall below the amount it should have contributed because its contribution was to have been at least that which the fire fighters contributed. The City's and the fire fighters' under-contributions to the Fund (caused by the City's error in calculating the average monthly salary) caused the Fund to lose income that it would have earned but for the City's error.

Appellants further alleged that the error caused an incorrect benefit rate for the years 1984–1985, 1985–1986, and 1986–1987. Persons who received benefits were underpaid the maximum benefits that they had bought and paid for during their employment in the amount of $474,022.12 through August 31, 1992.

Appellants sued appellees for violations of the Texas Trust Act, negligence, breach of contract, and breach of the duty of good faith and fair dealing arising out of a special relationship.

5. Section 3 of the 1937 Act required that "the City or town treasurer" sit on the "Board of

Firemen's Relief and Retirement Fund Trustees."

■ The City and the Board (appellees) moved for summary judgment alleging numerous defenses and affirmative defenses. The trial court ordered that Richard Herschbach, individually, and as the appellants' class representative, take nothing by his claims against appellees. Since the trial court's summary judgment order does not state which defenses or affirmative defenses it relied upon to support its judgment, we must address all of the defenses and affirmative defenses that it could have relied upon in granting the summary judgment.

## Standard of Review

■ In reviewing a summary judgment record, we must decide whether a disputed material fact issue exists that would preclude a summary judgment. *Gonzalez v. Mission American Ins. Co.*, 795 S.W.2d 734, 736 (Tex. 1990); *Bayouth v. Lion Oil Co.*, 671 S.W.2d 867, 868 (Tex.1984). When deciding whether a disputed material fact issue exists precluding summary judgment, we take evidence favorable to the non-movant as true. We indulge every reasonable inference in favor of the non-movants and resolve any doubts in their favor. *Wilcox v. St. Mary's Univ.*, 531 S.W.2d 589, 593 (Tex.1975). The question on appeal is not whether the summary judgment proof raises a fact issue with reference to the essential elements of the plaintiff's cause of action, but whether the summary judgment proof establishes that the movant is entitled to summary judgment as a matter of law. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970); *Tucker v. Atlantic Richfield Co.*, 787 S.W.2d 555, 557 (Tex.App.— Corpus Christi 1990, writ denied).

■ When a defendant moves for summary judgment based upon an affirmative defense, it bears the burden to expressly present and conclusively prove all elements of the affirmative defense as a matter of law so that no genuine issue of material fact exists. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–311 (Tex.1984). The movant-defendant must come forward with summary judgment evidence with respect to each element of the affirmative defense. *Nichols v. Smith*, 507 S.W.2d 518, 520 (Tex.1974). Unless the

movant conclusively establishes the affirmative defense, the non-movant plaintiff has no burden in response to a summary judgment motion filed on the basis of an affirmative defense. *Torres v. Western Casualty & Sur. Co.*, 457 S.W.2d 50, 52 (Tex.1970). If a movant establishes an affirmative defense which would bar the suit as a matter of law, the non-moving party must then adduce summary judgment proof raising a fact issue in avoidance of the affirmative defense; *e.g.*, facts which would bring the matter within an exception or defense to the movant's affirmative defense. *Palmer v. Ensearch Corp.*, 728 S.W.2d 431, 435 (Tex.App.—Austin 1987, writ ref'd n.r.e.).

## Appellants' Points Of Error

■ By point eight, appellants complain that the trial court erred by ruling that the Board was not a legal entity with the capacity to become a defendant in this lawsuit. The Board moved for summary judgment on the ground that it was not a legal entity with the capacity to become a defendant in a lawsuit.[6]

Article 6243e, sections 3 and 3B established Boards of Firemen's Relief and Retirement Fund Trustees in this state. They were composed of city officials and elected members of the fire department. The Boards' basic duty was to administer the retirement program established under article 6243e. It had the power to receive, handle and control, manage and disburse the Fund. In our opinion, the Board in this case was in the nature of a public administrative body. *See* Op.Tex.Att'y Gen. No. JM–926 (1988) (finding that board of trustees of fire fighters' relief and retirement fund established under article 6243e.1 (which had similar characteristics as the Board in this appeal) was a public administrative body).

■ Texas law requires that public administrative bodies have statutory authority in order to sue or to become a defendant in a lawsuit. The supreme court, in upholding a decision that disallowed the Industrial Accident Board from joining in a suit, said that "[t]he right to sue and be sued has not been

**6.** This is not a standing issue; rather, it is a    capacity issue.

conferred upon ... [the board]. It is the general rule that a public administrative body cannot sue or be sued in the absence of statutory authority." *Texas Employers' Ins. Ass'n v. Elder*, 155 Tex. 27, 282 S.W.2d 371, 376 (1955). Employing this rule, we find that the Board has no authority to sue or to allow others to sue it, except for those limited circumstances found in article 6243e, sections 22 [7] and 24.[8] We hold that the trial court correctly granted summary judgment based on the Board's capacity defense. We overrule point eight.

By point one, appellants complain that the trial court erred in its construction of section 10A–3(d). They argue that for the fiscal years 1983–1984, 1984–1985, and 1985–1986, the City and the Board did not calculate the average monthly salary pursuant to section 10A–3(d).

The summary judgment proof showed that in 1987, Debra Andrews wrote the Board a memorandum stating that the average monthly salary had been incorrectly calculated for the years 1984–1985, 1985–1986, and 1986–1987. In 1989, Juan Garza canceled the plan to collect the alleged under-contributions. As a result, the City's withholdings from the fire fighters' paychecks fell below the amount which it should have withheld but for the alleged error.

Richard Herschbach's deposition excerpts showed that the nature of the alleged error was the method the City used to calculate the payroll deductions. His explanation of the error does not completely define its intricacies.[9] However, appellants did not have the burden to prove a *prima facie* case of error; rather, appellees had the burden to show, as a matter of law, that an error in calculating the average monthly salary did not occur in the fiscal years 1983–1984, 1984–1985, and 1985–1986. The City did not meet its burden. We hold that the trial court

erred if it granted summary judgment on this ground. We sustain point one.

By points three and seven, appellants complain that the trial court erred by ruling that governmental immunity shielded the City from liability.

Appellants alleged that the City was negligent by 1) committing an error in the calculation of the fire fighters' average monthly salaries in the fiscal years 1984–1985, 1985–1986, and 1986–1987, 2) perpetuating the error "for the years 1984" [sic] after having received specific notice of the error, 3) failing to notify them that an error had occurred, and 4) failing and refusing to correct the error even though appellees knew that the error had occurred and that the Fund and the benefit recipients would incur damages if the error was not corrected.

The City moved for summary judgment on the grounds that Juan Garza calculated the "average annual salary" as a Board member or, alternatively, as a City employee. It contended that if he made the calculation as the City's agent, then it was immune from tort liability because making the calculation was a governmental act. On the other hand, if he made the calculation as a Board member, then the City was not liable for his conduct. The City further argued that if its agents or employees made the calculations, then their acts were statutorily required acts; therefore, it would not have incurred liability.

The supreme court stated in *Missouri Pac. R.R. Co. v. Brownsville Navigation District* [10] that governmental immunity consists of two basic principles of law. First, the state as sovereign is immune from suit without consent. *Missouri Pac. R.R.*, 453 S.W.2d at 813. This doctrine bars a suit against the state unless the state has expressly given its consent to become a defen-

---

7. Section 22 requires the city attorney to "represent the Board of Trustees of that city or town in all cases of appeal to the Firemen's Pension Commissioner by any claimant from the order or decision of such Board of Trustees."

8. Section 24 applies to the Board's authority to recover by civil action from any offending party or from his or her bondsmen, if any, any money paid out or obtained from the Fund through

fraud, misrepresentation, defalcation, theft, embezzlement, or misapplication.

9. Had appellees desired a more specific explanation of the alleged error, they could have filed special exceptions.

10. 453 S.W.2d 812 (Tex.1970).

dant in a lawsuit. *See, e.g., Missouri Pac. R.R. Co.*, 453 S.W.2d at 814 (statute creating navigation district that states that district can "sue and be sued in all courts of this state" sufficient consent to sue state); Texas Tort Claims Act, Tex.Civ.Prac. & Rem.Code Ann. § 101.025 (Vernon 1986) (person having claim under Tort Claims Act granted permission to sue);[11] Tex.Civ.Prac. & Rem.Code Ann. §§ 107.001–005 (Vernon Supp.1994) (Legislative resolution granting permission to sue the state).

■ Second, the state has immunity from liability, even though it has granted consent to the suit. *Missouri Pac. R.R.*, 453 S.W.2d at 813; Tex.Civ.Prac. & Rem.Code Ann. § 107.002(b) (Vernon Supp.1994) (legislative resolution granting permission to sue state does not waive immunity from liability); *see also* TTCA, §§ 101.021, .023, .025(a).

■ An exception to the general rule of governmental immunity is that a municipality is not immune from its proprietary functions. *City of Austin v. Daniels*, 160 Tex. 628, 335 S.W.2d 753, 755 (1960); *Couch v. Ector County*, 860 S.W.2d 659, 661 (Tex. App.—El Paso 1993, no writ). When analyzing a cause of action brought under the TTCA against a municipality, our initial determination is whether the municipality's action or omission involved its proprietary function or governmental function. *Dalon v. City of DeSoto*, 852 S.W.2d 530, 535 (Tex. App.—Dallas 1992, no writ); *McKinney v. City of Gainsville*, 814 S.W.2d 862, 865 (Tex. App.—Fort Worth 1991, no writ). This determination is crucial because TTCA, § 101.-0215(b) states that the Act "does not apply to the liability of a municipality for damages arising from its proprietary functions...." On the other hand, if the municipality's ac-

tion is considered a governmental function, the TTCA does apply, and further analysis under the Act is required to determine its potential liability.[12]

■ Governmental functions are "those functions that are enjoined [13] on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public...." TTCA, § 101.-0215(a). In contrast, proprietary functions "are those functions that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality...." TTCA, § 101.0215(b). The Legislature statutorily listed those municipal activities that fall within a municipality's governmental functions in TTCA, § 101.0215(a) and those activities that fall within a municipality's proprietary functions in TTCA, § 101.0215(b). Neither list is inclusive.

■ TTCA, § 101.0215(c) states that "[t]he proprietary functions of a municipality do not include those governmental activities listed within Subsection (a)." Thereby, the Legislature gave deference to the judiciary to interpret what constitutes a proprietary function so long as it was not listed as a governmental function under subsection (a). *City of Houston v. Southwest Concrete Constr., Inc.*, 835 S.W.2d 728, 731 (Tex. App.—Houston [14th Dist.] 1992, writ denied).

■ Thus, a plaintiff may hold a municipality liable for the tortious acts of its officers and employees by showing that at the time of the tortious conduct, the municipality was performing a proprietary function, or TTCA, § 101.021 had waived its immunity. For this Court to conclude that the City was subject to governmental immunity, we would

---

11. Chapter 101 of which this is a part is commonly referred to as the Texas Tort Claims Act (TTCA). Unless otherwise indicated, we will make all statutory references to sections of that Act appearing in Tex.Civ.Prac. & Rem.Code Ann. (Vernon 1986 & Supp.1994).

12. A municipality, as a political subdivision of the State, is not liable for the acts or conduct of its officer or employees unless the TTCA waives the municipality's common-law immunity. *City*

*of Lancaster v. Chambers*, 883 S.W.2d 650, —— (1994). The applicable waiver provision is found at section 101.021 of the Texas Civil Practice & Remedies Code.

13. This court has stated that "enjoined" as used in the context of section 101.0215(a) means to order, to require, to command, to urge or impose with authority, or positively direct. *Josephine E. Abercrombie Interests, Inc. v. City of Houston*, 830 S.W.2d 305, 308–09 (Tex.App.—Corpus Christi 1992, writ denied).

have to decide that 1) the calculation of the average monthly salary was an act enjoined upon the City as part of the State's sovereignty, and 2) that the City exercised the function in the interest of the general public. The City must have met both of these conditions in order to invoke governmental immunity. *See Josephine E. Abercrombie Interests, Inc. v. City of Houston,* 830 S.W.2d 305, 309 (Tex.App.—Corpus Christi 1992, writ denied). We must strictly construe the doctrine of municipal immunity against the municipality. *See, e.g., City of Gladewater v. Pike,* 727 S.W.2d 514, 519 (Tex.1987).

In the instant case, the Legislature passed section 6243e, which required the City to form a board of trustees in order to "receive, handle and control, manage, and disburse" the Fund. The legislature passed section 10A–3 as an amendment to article 6243e. Section 10A–3 was optional in its coverage; that is, it stated that it applied to all cities "which *adopt* the provisions of this section by majority vote of the participating members of the fund and adopted by ordinance." (emphasis ours). This language shows that the state did not *enjoin* section 10A–3 upon the City; it lacks the element of command necessary for enjoining a function on a municipality. *See Josephine E. Abercrombie Interests,* 830 S.W.2d at 309. Once the City adopted section 10A–3, however, it was bound to follow the accounting procedures included therein.[14]

■ We hold that the City did not prove its defense of governmental immunity[15] and that the trial court erred if it granted summary judgment on the basis that governmental immunity protected the City. We overrule the argument.

■ Pertinent to points of error three and seven is the City's ground for summary judgment that it was not an agent of the Corpus Christi Fire Fighters' Retirement System. The City asserted that article 6243e required various city employees to act in dual capacities; that is, as Board members and as City employees. Therefore, it was not liable for their acts as Board members.

In situations like the one now before us, Boards of trustees were composed of (1) city officials serving *ex officio* and (2) members of the fire department elected by the membership. *See* article 6243e, sections 3, 3A, & 3B. The city treasurer, serving as treasurer of the Board, was custodian of the Firemen's Relief and Retirement Fund for the City. *See* article 6243e, section 3.

In the instant case, Juan Garza served as the City's Director of Finance. His affidavit was attached to the City's summary judgment motion. The affidavit stated, in relevant part:

I was a member of the Board of Trustees of [the] Corpus Christi Firemen's Relief and Retirement Fund in 1984, 1985, and 1986 until October. I was also, during that time, the Director of Finance for the City of Corpus Christi, which is the City's Chief Financial Officer. I acted as Secretary–Treasurer of the Board during that time period.

In my position on the Board, I always acted on behalf of the Fund. Acts which I did as a Board member included voting, discussion, and keeping the books and records as Secretary–Treasurer. These acts did not benefit or aid the City of Corpus Christi, but did benefit and aid the Firemen's Fund.

I asked Earl Hearne to calculate the average monthly salary to be used in the 1984–85, 1985–86, and 1986–87 fiscal years. The fiscal year started in September.

---

14. The City makes clear that the adoption of section 10A–3 did not alter the mandatory nature of payroll contributions, but altered the method of calculating contributions. Appellants' suit alleged an error in *calculating* the fire fighters' average monthly salaries as provided in section 10A–3.

15. The City argues that it was immune from liability for the alleged negligence because the acts were in furtherance of its governmental function of providing fire protection. *See* TTCA,

§ 101.0215(a)(1). This argument was not presented in the City's summary judgment motion. A summary judgment motion must itself expressly present the grounds upon which it is made, and it must stand or fall on the grounds expressly presented therein. In determining whether grounds are expressly presented, reliance may not be placed on *briefs* or summary judgment evidence. *McConnell v. Southside Indep. School Dist.,* 858 S.W.2d 337, 341 (Tex.1993).

The calculation was not done to assist the City, but was done pursuant to my duties as a Board Member.

On October 6, 1986, I was replaced on the Board when I left my position as Director of Finance to become Assistant City Manager of the City of Corpus Christi.

Debra Andrews automatically became a member of the Board pursuant to State Law....

■ An agent is a person who consents to act on behalf of and subject to the control of another, the principal, who has manifested consent that the agent shall so act. *Republic Bankers Life Ins. Co. v. Wood,* 792 S.W.2d 768, 778 (Tex.App.—Fort Worth 1990, writ denied). Garza's affidavit does not show that the City's employee(s) were not acting as the Board's agent(s) when the alleged miscalculation was made. We hold that the City did not meet its burden to show that it was not acting as the Board's agent when the alleged miscalculation was made. We sustain points three and seven.

■ By point four, appellants complain that the trial court erred when it ruled that the City was not a party to any contract concerning the collection of contributions, or their distribution. Appellants alleged a contract with the City as follows: When the Fund was established, the City agreed to assist the fire fighters in adopting article 6243e, section 10A–3 to serve as an incentive for them to retire. In August 1973, the City adopted Ordinance No. 11608, allowing the fire fighters to pay and receive benefits based on article 6243e, section 10A–3. The plan's design was to assure that persons qualified to receive benefits from the Fund would collect the maximum amount that the Fund could afford to pay, yet remain viable. On that basis, along with the City's representations regarding how the Fund would work and how it would support the Fund, and in reliance upon the provisions of article 6243e, the fire fighters allowed the withholding from their paychecks the monthly contributions to the Fund.

Appellants alleged that the City breached the contract by failing to properly calculate their average monthly salary for the years 1984, 1985, and 1986, refusing to correct the error, and authorizing payments to benefit recipients based on an inaccurate amount of available funds.

The City moved for summary judgment on the grounds that as a matter of law it was not a party to any contract concerning the collection of contributions or their distribution. It argued that the contributions, as a percentage of monthly salary, were discretionary with the Board, and that the Board, according to state law,[16] could approve lower contributions. Thus, it had no contract to collect any specific figure. The City further argued that even if a contract or contracts created the Fund, the contract or contracts were completed, the Fund was created, and no continual contractual obligation existed. The City's position was that the legal relationship between itself and appellants was not based upon contract, but upon the statute creating the retirement system.

The City offered Jorge Garza's affidavit as summary judgment proof to support these assertions. Garza worked for the City as Group Manager Administrative Services and stated in relevant part:

The City of Corpus Christi has not agreed to provide any benefits not [sic] to provide benefits in any specific amount or formula. The City has received no consideration from the firefighters in regards to pension benefits. The City has not warranted or guaranteed any certain level of benefits to be given. That decision is made solely by the fund, and voting members....

Section 10A–3 (House Bill 910) was adopted by the members and by ordinance.

The City collects, through payroll deduction, an amount voted on by the Board and membership as the firefighters contribution to the Fund. The City acts as a collector and pass through only as to these funds, which are deducted from the firefighters' payroll check and deposited to the Fund. This is a statutory mandated responsibility under state law.

---

**16.** The City does not refer us to a statutory citation.

The Corpus Christi firefighters adopted a contribution rate of nine percent (9%) of the average annual salary of the firefighters. . . .

The City has a contract with the firefighters. . . . The 1983 contract was in effect from August 1, 1983 to February 27, 1986. The 1986 contract was in effect from February 27, 1986 to July 31, 1988. The contract continued in virtually the same form to the present. The contract however, does not address the pension contribution or plan, except to state what the amount of the City's contribution will be. The City never made any agreements regarding the firemen's contribution, collection, or calculation of same. . . .

■ A plaintiff asserting a breach of contract action must show the existence of a contract between the parties, that the contract created duties, that a breach of the duties occurred, and that the party sustained damages. *City of Corpus Christi v. Bayfront Associates, Ltd.*, 814 S.W.2d 98, 103 (Tex. App.—Corpus Christi 1991, writ denied); *TCI Cablevision of Texas, Inc. v. South Texas Cable Television, Inc.*, 791 S.W.2d 269, 271 (Tex.App.—Corpus Christi 1990, writ denied). We believe that the contract alleged in the case between the City and appellants was in the nature of a unilateral contract. A contract is unilateral when one party furnishes no consideration of value to the other party and does not obligate itself to do anything which may result in injury to itself, or a benefit to the opposite party. *Edwards v. Roberts*, 209 S.W. 247, 250–51 (Tex.Civ. App.—Austin 1918, no writ), *motion for reh'g denied*, 212 S.W. 673 (Tex.Civ.App.—Austin 1919, writ dism'd). This type of contract is completed by the promisee's performing the act or acts called for, not by such promisee making any reciprocal promise or promises. *Shirey v. Albright*, 404 S.W.2d 152, 156 (Tex. Civ.App.—Corpus Christi 1966, writ ref'd n.r.e.).

In this case, when the City adopted section 10A–3 by ordinance, it assumed the duty to properly compute the average monthly salary. Garza's affidavit does not state that the City properly made the computation, or that the City did not assume this duty. The City

unilaterally bound itself by adopting section 10A–3. Appellants relied upon the City's action by making contributions to the Fund. The City failed to show by summary judgment proof that it did not have a contract with appellants. We sustain point four.

■ By point five, appellants complain that the trial court erred when it ruled that the Texas Trust Act was not applicable to the City. Before reaching the merits, we address the City's argument in its brief that appellants judicially waived their Trust Code claims against it and, therefore, cannot raise this complaint on appeal. It argues that appellants waived this claim by making judicial admissions, failing to object to the trial court's oral pronouncement of waiver, and failing to object to the recitation in the judgment that they had waived this claim.

During oral argument at the summary judgment hearing, appellants' counsel made the following statements to the trial court:

Counsel: I want to make it clear, the DTPA and Trust Act against the city—

Court: Those are—

Counsel: Those have been decided.

Court: Okay.

Counsel: As to the board, though, I don't concede those.

Court: Okay. Well—

After further argument to the trial court, appellants' counsel stated, "The point is that the city and the fund exists [sic] as separate entities. The city is, I agree, not subject to DTPA nor the Trust Act problem. . . ."

### Was There a Judicial Admission?

■ A true judicial admission is a formal waiver of proof usually found in pleadings or the stipulations of the parties. *Hennigan v. I.P. Petroleum Co.*, 858 S.W.2d 371, 372 (Tex.1993); *Mendoza v. Fidelity & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex.1980). The vital feature of a judicial admission is its conclusiveness on the party making it. It not only relieves that party's adversary from making proof of the fact admitted but also bars the party from disputing it. *Gevinson v. Manhattan Constr. Co.*, 449 S.W.2d 458, 466 (Tex.1969). Thus, the issue

is whether appellants and the City entered into a *stipulation,* and, if so, whether the stipulation supported a waiver of appellants' claim.

When parties want to further restrict the issues for summary judgment beyond those "expressly presented" by the written motion, the answer to the motion, or any other written response, the change must satisfy rule 11. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 677 (Tex. 1979). Rule 11 provides that "[u]nless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, *or unless it be made in open court and entered of record.*" TEX. R.CIV.P. 11 (emphasis supplied).

An appellate court has defined a stipulation as "an agreement, admission, or concession made in a judicial proceeding by the parties or their attorneys, respecting some matter incident thereto." *National Union Fire Ins. Co. v. Martinez,* 800 S.W.2d 331, 334 (Tex.App.—El Paso 1990, no writ). A court must determine the intention of the parties in a trial stipulation from the language used in the entire agreement "in the light of the surrounding circumstances, including the state of the pleadings, the allegations therein, and the attitude of the parties in respect of the issues." *Discovery Operating, Inc. v. Baskin,* 855 S.W.2d 884, 886–87 (Tex.App.—El Paso 1993, orig. proceeding); *Mann v. Fender,* 587 S.W.2d 188, 202 (Tex. Civ.App.—Waco 1979, writ ref'd n.r.e.). The trial court should disregard the stipulation if it is ambiguous and uncertain in its terms. To have a binding, open-court stipulation, the parties must dictate into the record all material terms of the agreement and their assent thereto. *Baskin,* 855 S.W.2d at 887.[17]

In this instance, no specific, material terms of a stipulation were dictated into the record. Counsel's remarks concerning the Trust Act claims were uncertain and did not state the terms of any stipulation. Based upon the record, we cannot say that appellants and the City entered into a stipulation. *See Baskin,* 855 S.W.2d at 887; TEX.R.CIV.P. 11.

### Oral Pronouncement and Judgment

When the parties ended their oral argument at the summary judgment hearing, the trial court stated, as part of its ruling, "Since there's no opposition to the city's motion on the ... Trust Act Claims ... the motion is granted, as to those matters." In their response to the City's summary judgment motion, appellants responded to the City's motion on the Trust Act claims. Further, they had no duty to object to this statement in order to preserve this complaint for appeal. *See City of Houston,* 589 S.W.2d at 678 ("the non-movant must expressly present to the trial court any reason seeking to avoid movant's entitlement [to summary judgment]....").

The final judgment recites, in part, that "Counsel for Plaintiffs [appellants] further having represented to the Court, in open Court, that Plaintiffs' causes of action against the City of Corpus Christi based on the Deceptive Trade Practices Act and Trust Act are conceded." Appellants and the City did not enter into a stipulation to support this recitation. A judgment cannot stand unless the evidence supports it. *Escamilla v. Estate of Escamilla,* 805 S.W.2d 886, 887 (Tex.App.—Corpus Christi 1991, no writ); *Lyles v. Johnson,* 585 S.W.2d 778, 782 (Tex. Civ.App.—Houston [1st Dist] 1979, writ ref'd n.r.e.). We conclude that appellants did not judicially waive their Trust Code claims against the City. We overrule the argument.

Turning to the merits of point five, appellants alleged that pursuant to article 6243e, the City was bound to administer the affairs of the Fund and not violate or permit a violation of any provision of the Trust Act. The City moved for summary judgment on the grounds that the Trust Act's provisions were not applicable to it and that it had no trust responsibilities. The City contended

---

**17.** The *Baskin* Court said that a stipulation is sometimes a contractual agreement which must include, express or implied, an offer, acceptance, and consideration, and is at other times, a mere concession or admission made by one or both parties to save time and expense, requiring none of the usual contractual elements. *Baskin,* 855 S.W.2d at 887.

that as a matter of law it made an "error in collecting."

Section 111.003 of the Texas Trust Code provides that a "trust" is an express trust only. TEX.PROP.CODE ANN. § 111.003 (Vernon 1984). An "express trust" is defined as "a fiduciary relationship with respect to property which arises as a manifestation by the settlor of an intention to create the relationship and which subjects the person holding title to the property to equitable duties to deal with the property for the benefit of another person." TEX.PROP.CODE ANN. § 111.004(4) (Vernon 1984). Section 121.003 provides that "[t]he Texas Trust Act (Chapters 111 through 115) applies to a pension trust." TEX.PROP.CODE ANN. § 121.003 (Vernon 1984). We liberally construe the Trust Act's provisions in order to provide coverage.

The trust in this case involves a statutory trust that had the purpose to provide pension benefits to retired fire fighters. This type of trust is not statutorily excluded from coverage under the Trust Act. This trust created a trust relationship between the City and the fire fighters that subjected the City to a fiduciary relationship with the fire fighters. We hold that the City has not met its burden to show that the Trust Act did not apply to the trust in this case. We sustain appellants' argument.

### Breach Of The Duty Of Good Faith And Fair Dealing

By this same point of error, appellants argue that a trustee owes the beneficiaries the duty of good faith and fair dealing. Appellants alleged that the Texas Trust Code imposed a special relationship between the City, the active fire fighters who were contributing to the Fund, and the Fund's benefit recipients. According to appellants, the City contracted to calculate the active fire fighters' contributions to the Fund which directly affected the amount of benefits that the benefit recipients were to receive. The City's alleged miscalculation of the fire fighters' average monthly salary for the fiscal years 1984–1985, 1985–1986, and 1986–1987, along with the City's failure to correct the error and its false representation that the calculations were properly made, constituted a vio-

lation of the duty of good faith and fair dealing arising out of the special relationship.

The City moved for summary judgment on the grounds that as a matter of law it had no fiduciary duty or special relationship to appellants. Therefore, it did not owe them an obligation of good faith and fair dealing. It further asserted that the alleged miscalculation did not constitute bad faith or unfair dealing.

A fiduciary relationship exists between a trustee and the trust beneficiary, and the trustee must not breach or violate this relationship. A trustee owes a trust beneficiary an unwavering duty of good faith, fair dealing, loyalty and fidelity over the trust's affairs and its corpus. *Ames v. Ames,* 757 S.W.2d 468, 476 (Tex.App.—Beaumont 1988), *aff'd and modified,* 776 S.W.2d 154 (Tex.1989), *cert. denied,* 494 U.S. 1080, 110 S.Ct. 1809, 108 L.Ed.2d 939 (1990). A trustee's fundamental duties include the use of the skill and prudence which an ordinary, capable, and careful person will use in the conduct of his own affairs as well as loyalty to the trust's beneficiaries. *Neuhaus v. Richards,* 846 S.W.2d 70, 74 (Tex.App.—Corpus Christi 1992), *judgment set aside without reference to merits to effect settlement agreement,* 871 S.W.2d 182 (Tex.1994); *Interfirst Bank Dallas, N.A. v. Risser,* 739 S.W.2d 882, 888 (Tex.App.—Texarkana 1987, no writ). Section 113.056(a) of the Texas Property Code states with regard to the duties and liabilities of a trustee to properly manage trust funds:

> Unless the terms of the trust instrument provide otherwise, in acquiring, investing, reinvesting, exchanging, retaining, selling, supervising, and managing trust property . . . a trustee shall exercise the judgment and care under the circumstances then prevailing that persons of ordinary prudence, discretion, and intelligence exercise in the management of their own affairs . . . .

TEX.PROP.CODE ANN. § 113.056(a) (Vernon Supp.1994).

In the instant case, the City's summary judgment proof failed to show that it did not err in calculating the fire fighters' average

monthly salary for the years 1983–1984, 1984–1985, and 1985–1986. Therefore, a fact issue remains whether the City breached the duty of good faith and fair dealing which it owed to the beneficiaries of the Fund. We hold that the trial court erred if it granted summary judgment on this cause of action. We sustain point five.

By point six, appellants complain that the trial court erred by ruling that the equitable doctrines of waiver, estoppel, ratification, acceptance of benefits, and laches barred their claims.

The City moved for summary judgment based on the affirmative defenses of waiver, estoppel, ratification, laches, and acceptance of benefits. In its summary judgment motion, the City alleged that the Board or "members," who acted as agents for the benefit recipients (appellants) and the active fire fighters, ratified or directed all of its acts. It denied liability for the Board's acts. It further alleged that when the fire fighters refused to correct the alleged mistake, they ratified the error.

In support of their motions, the City relied on Juan Garza's affidavit. He stated, in part, that in 1989, he decided to collect the alleged under-contribution from the active fire fighters who would have initially paid the money. He further stated that:

However, several firefighters came to my office. They were John Tanguma and others. John Tanguma was the president of the Fire Fighters' Union, International Association of Firefighters, Local Union No. 936. He stated that he was speaking for the firefighters. Firefighters are members of the Union. All firefighters are the same firefighters who are members of the retirement fund.

The firefighters are the persons who vote on the contribution rate and pension amounts.

The firefighters told me they did not wish to make the contributions, as it would negate their recent pay increases. They stated that the contributions would not make any difference to the fund, nor to the retirees. They stated that the money contributed to the fund was theirs to control, not the City's. They stated that the con-

tribution would not result in increased benefits to the retirees as they would not vote to increase benefits to the retirees.

Bill Hennings, a Board member, also conveyed to me that the Board was not willing to proceed with the payroll deduction to correct the alleged undercontribution, and were planning to request an Attorney General opinion on the matter....

Based on the request of the Board and firefighters' representatives, I halted the plans in effect to correct the undercontribution....

### Waiver & Estoppel

■■■ Waiver and estoppel are separate and distinct legal doctrines. Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Sun Exploration & Production Co. v. Benton,* 728 S.W.2d 35, 37 (Tex.1987); *Edwin M. Jones Oil Co. v. Pend Oreille Oil & Gas Co.,* 794 S.W.2d 442, 447 (Tex.App.—Corpus Christi 1990, writ denied). It is a voluntary act and implies an election to dispense with something of value or to forego some advantage that might have been demanded or insisted upon. *Edwin M. Jones Oil Co.,* 794 S.W.2d at 447; *El Paso Dev. Co. v. Berryman,* 769 S.W.2d 584, 589 (Tex.App.—Corpus Christi 1989, writ denied). Without an express renunciation of a known right, a waiver will not be presented or implied contrary to the intention of the party whose rights would be injuriously affected thereby, unless by his conduct the opposite party has been misled to his prejudice into an honest belief that the waiver was intended or assented to. *Edwin M. Jones Oil Co.,* 794 S.W.2d at 447; *El Paso Dev. Co.,* 769 S.W.2d at 589–90.

■■■ Estoppel, on the other hand, arises "where by fault of one, another has been induced to change his position for the worse." *Edwin M. Jones Oil Co.,* 794 S.W.2d at 447. *See Wirtz v. Sovereign Camp W.O.W.,* 268 S.W. 438, 441 (Tex.1925); *Pioneer Oil Co. v. Vallejo,* 750 S.W.2d 928, 929 (Tex.App.—Corpus Christi 1988, no writ). To constitute an equitable estoppel, there must exist: (1) a false representation or con-

cealment of material facts; (2) made with actual or constructive knowledge of the facts; (3) to a party without knowledge, or the means of acquiring knowledge of the real facts; (4) made with the intention that it should be acted on; and (5) the party to whom it was made must have relied on or acted on it to his prejudice. *Edwin M. Jones Oil Co.*, 794 S.W.2d at 447; *Vallejo*, 750 S.W.2d at 929; *see also Gulbenkian v. Penn,* 252 S.W.2d 929, 932 (Tex.1952); *Swiderski v. Prudential Property & Casualty Ins. Co.,* 672 S.W.2d 264, 269 n. 2 (Tex.App.—Corpus Christi 1984, writ dism'd).

◼ In the instant case, the fact that a group of fire fighters did not wish to make the contributions, or that the Board was not willing to proceed with the payroll deductions, does not show that appellants intentionally relinquished any known right that they might have had to correct the alleged miscalculation, or that they engaged in any conduct inconsistent with claiming that right. The City has presented no summary judgment evidence to show that appellants waived these rights. Further, the City has presented no summary judgment evidence to show that, due to appellants' fault, it changed its position for the worse. Since no summary judgment proof supports waiver and estoppel, the City's summary judgment cannot stand on these grounds.

### Ratification & Acceptance Of Benefits

◼ When a person having the right to accept or reject a transaction accepts benefits from it, that person *ratifies* the transaction. He or she is bound by it, and cannot avoid its obligation or effect by taking a position inconsistent with it. *Theriot v. Smith,* 263 S.W.2d 181, 183 (Tex.Civ.App.— Waco 1953, writ dism'd); *McDorman v. Goodell,* 69 S.W.2d 428, 431 (Tex.Civ.App.—El Paso 1934, no writ). When a person accepting benefits does not have knowledge of all material facts, ratification or estoppel cannot ensue from acceptance of the benefits. *Frazier v. Wynn,* 472 S.W.2d 750, 753 (Tex.1971); 31 C.J.S. *Estoppel,* § 109 (1964).

18.   176 S.W.2d 167 (Tex.1943).

◼ Even though appellants, as benefit recipients, received benefits from the Fund, this does not mean that they ratified any of the alleged miscalculations of the average monthly salary. The City has offered no summary judgment evidence showing that appellants knew all of the material facts about the alleged miscalculations. The City's summary judgment motion cannot stand on these grounds.

### Laches

◼ In *Culver v. Pickens,*[18] the supreme court defined laches as follows:

Laches, in legal significance, is not mere delay but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within the limits allowed by law; but when knowing his rights, he takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as estoppel against the assertion of the right

*Culver,* 176 S.W.2d at 170–71. In the instant case, the City presented no summary judgment proof showing an unreasonable delay by appellants or a good-faith, detrimental change of position on its part. There being no summary judgment proof supporting laches, the City's summary judgment cannot stand on that ground. We hold that the trial court erred if it granted summary judgment on any these defenses. We sustain point six.

◼ By point nine, appellants complain that the trial court erred by ruling that the alleged under-contributions did not proximately cause lowered pension amounts. The City moved for summary judgment on the ground that the alleged under-contributions to the Fund did not proximately cause damages to appellants. Its position was that appellants "assume" that increased contributions to the Fund would automatically lead to more benefits to the benefit recipients. It contended that, by law, after it made the withholdings from the firemen's paychecks,

three separate, independent conditions had to occur before benefit recipients could receive more benefits. The City further argues that it had no control over these conditions. These three conditions are found in article 6243e, section 7:

Sec. 7. (a) The board of trustees of a retirement system may change the benefits ... and may adopt or change other requirements for the payment of benefits, except as otherwise prohibited by this Act.

(b) Before a board of trustees chooses to adopt or change a benefit or requirement for payment of benefits under this section, the proposed addition or change must be approved by:

(1) an eligible actuary selected by the board; and

(2) a majority of the participating members of the retirement system voting on the addition or change by secret ballot at an election held for that purpose at which at least 50 percent of all participating members of the retirement system vote.

TEX.REV.CIV.STAT.ANN. art. 6243e, § 7 (Vernon Pamph.1994).

Therefore, the City contended, appellants' cause of action must fail because: they are seeking this Court's advisory opinion concerning the Board's discretionary functions; and the alleged under-contributions did not proximately cause lowered pension amounts.

Appellants do not seek to "change the benefits" as provided in article 6243e, section 7; rather, they sought to *correct* an alleged error in calculating the average monthly salary. Therefore, the conditions precedent found in article 6243e, section 7 do not apply to this situation.

▆▆▆ The two elements of proximate cause are cause in fact and foreseeability. *Travis v. City of Mesquite,* 830 S.W.2d 94, 98 (Tex.1992). The City's summary judgment evidence does not show that the alleged miscalculation was not a proximate cause of damages to appellants. We hold that the trial court erred if it granted summary judgment on this ground. We sustain point nine.

By point ten, appellants complain that the trial court erred by ruling that the City was immune from liability for attorneys fees. Appellants sought attorneys fees under section 114.064 of the Texas Trust Code and section 38.001 of the Texas Civil Practice & Remedies Code. The City moved for summary judgment on the basis that it was immune from liability for attorneys fees.

Section 114.064(a) of the Trust Act provides that "[i]n any proceeding under this code the court may make such award of costs and reasonable and necessary attorney's fees as may seem equitable and just." TEX.PROP. CODE ANN. § 114.064(a) (Vernon Supp.1994). We have already held that appellants have a cause of action under the Trust Act against the City. Therefore, assuming that they can recover under the Trust Act, the trial court may make an award of costs and reasonable and necessary attorney's fees as may seem equitable and just. *See* TEX.PROP.CODE ANN. § 114.064(a) (Vernon Supp.1994).[19]

## The City's Cross–Point Of Error

▆▆▆ By a single cross-point, the City argues that we should affirm the summary judgment because appellants did not have standing to bring suit. The City moved for summary judgment on the ground that appellants had no standing to sue it for damages to the Fund, or to sue it for reduced benefits from the Fund. We disagree. Once the retired fire fighters, under the law, had a statutory right to receive their benefits, they were entitled to those benefits which they would have received if the alleged miscalculation had not occurred. We have already announced that the City had the responsibility to make the calculation. We hold that the trial court erred if it granted summary judgment on this basis. The cross-point is overruled.

Due to our disposition of appellants' points of error, we need not address appellants' remaining point of error. *See* TEX.R.APP.P. 90(a).

---

**19.** Since appellants may recover their attorneys fees under the Trust Act, we need not decide whether they can also recover their attorneys

fees under section 38.001 of the Texas Civil Practice & Remedies Code.

We AFFIRM the trial court's judgment that appellants do not have a cause of action against the Board of Trustees. We RE-VERSE and REMAND the remainder of the case for trial.