TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00021-CV






Janice Suzanne Allen, Appellant



v.



Benson A. E. Bentzin and Joan S. Bentzin, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. 96-11523, HONORABLE CHARLES F. CAMPBELL, JR., JUDGE PRESIDING







 Appellant Janice Suzanne Allen appeals from the district court's order directing her
to turn over more than $18,000 in assets to satisfy a judgment rendered against her in favor of
appellees Benson and Joan Bentzin. We will affirm.

 This suit arises out of a dispute between neighbors. Allen owned lots nineteen,
twenty, and twenty-four in a subdivision in Travis County.(1) Frank and Aline Fagan owned lots
twenty-one and twenty-three, which were adjacent and contiguous to Allen's lots. In October
1995, the Fagans sold one of their lots to the Bentzins. In September 1996, following several 
disputes concerning a property easement, Allen sued the Fagans and the Bentzins. The Fagans
filed a motion for summary judgment, and on April 28, 1997, the district court signed an order
granting their motion; the order was filed with the district clerk on May 1, 1997. The order states
that the court heard "the Motion for Summary Judgment filed by Defendants Frank Fagan and
Aline Fagan," granted the motion, ordering that Allen "take nothing in her suit against Frank
Fagan and Aline Fagan." The order concludes, "All other relief not expressly granted is denied."(2)

 On October 17, 1997, Allen filed a motion for clarification of the April 1997
summary judgment, asking whether the Mother Hubbard clause had the effect of disposing of all
of the claims in the suit or only of Allen's claims against the Fagans. On November 12, 1997,
the district court signed an order clarifying that the earlier summary judgment disposed only of
the claims between Allen and the Fagans and severing that portion of the lawsuit into a separate
action in which the summary judgment was a final judgment. The Bentzins and Allen continued
to litigate the remaining issues, with Allen filing an amended petition and agreeing to a pretrial
scheduling order. On February 24, 1999, the district court signed a final order disposing of the
remaining issues and parties and ordering Allen to pay the Bentzins $18,000. After a hearing on
December 23, 1999 (the turnover hearing), the district court signed the order from which Allen
appeals, ordering her to turn over assets to satisfy the $18,000 judgment (the turnover order). 

 In her first point of error, Allen argues that the inclusion of the Mother Hubbard
clause in the May 1996 summary judgment rendered it a final judgment and disposed of all issues
and parties in the case. Therefore, she contends, the turnover order was void. We disagree.

 When a summary judgment order appears to be final by its use of language
purporting to dispose of all claims and parties, that judgment should be treated as final for
purposes of appeal. Mafrige v. Ross, 866 S.W.2d 590, 592 (Tex. 1993). This does not mean that
any order granting summary judgment that contains a Mother Hubbard clause is automatically
considered a final judgment with regard to all claims and parties to a suit. Whether an order
granting summary judgment is considered a final judgment is determined by the language of the
order, the record, and the parties' conduct. Continental Airlines, Inc. v. Kiefer, 920 S.W.2d 274,
277 (Tex. 1996).

 In this case, the order granting summary judgment, while containing Mother
Hubbard language, references only the motion for summary judgment filed by the Fagans, and
recites that the Fagans' motion should be granted and that Allen should take nothing against the
Fagans. The order does not reference the remaining parties or claims which were not addressed
by the Fagans' motion for summary judgment. Allen and the Bentzins continued to litigate the
remaining claims, and Allen asked for and received clarification from the district court that the
order granting the Fagans' summary judgment was not a final judgment. Viewing the record,
order, and the parties' conduct, we think it is clear that the May 1997 order was not intended to
be a final judgment. Kiefer, 920 S.W.2d at 277. The Mother Hubbard language in the order
disposed only of the claims against the Fagans and does not clearly evidence an intent to dispose
of other parties or claims not addressed by the Fagans' motion for summary judgment. 
Vanderwiele v. Llano Trucks, Inc., 885 S.W.2d 843, 845 (Tex. App.--Austin 1994, no writ). 
Thus, the May 1997 order was not a final judgment, and actions taken by the district court after
the entry of that judgment are not void. Id. We overrule Allen's first point of error.

 In her second point of error, Allen contends there is no evidence to support the
turnover order. 

 A judgment creditor may turn to the courts to obtain satisfaction of the judgment
if the judgment debtor owns property that cannot readily be reached by ordinary legal processes
and is not exempt from attachment, execution, or seizure for satisfaction of debts. Tex. Civ. Prac.
& Rem. Code Ann. § 31.002(a) (West Supp. 2000). Except in certain circumstances, a court may
not order the turnover of property exempt under any statute, such as paychecks, retirement checks,
and various personal property exempted under chapter 42 of the Texas Property Code. Id.
§ 31.002(f); Tex. Prop. Code Ann. §§ 42.001-.005 (West 2000); Caulley v. Caulley, 806 S.W.2d
795, 797-98 (Tex. 1991). A turnover proceeding is intended to determine whether an asset is in
the possession or under the control of the debtor. Beaumont Bank, N.A. v. Buller, 806 S.W.2d
223, 227 (Tex. 1991). The party claiming that property is exempt from court-ordered turnover
has the burden of proving the exemption. Jacobs v. Adams, 874 S.W.2d 166, 167 (Tex.
App.--Houston [14th Dist.] 1994, no writ); Rucker v. Rucker, 810 S.W.2d 793, 795-96 (Tex.
App.--Houston [14th Dist.] 1991, writ denied).

 We review a turnover order under an abuse of discretion standard. Buller, 806
S.W.2d at 226; Parks v. Parker, 957 S.W.2d 666, 667 (Tex. App.--Austin 1997, no pet.). We
will not reverse a trial court's decision unless the court acted in an unreasonable or arbitrary
manner or without reference to any guiding rules or principles. Buller, 806 S.W.2d at 226; Parks,
957 S.W.2d at 668. Whether a turnover order is supported by evidence is a relevant consideration
in determining if a trial court abused its discretion. Buller, 806 S.W.2d at 226; Parks, 957
S.W.2d at 668. Even a turnover order predicated on an incorrect conclusion of law will not be
reversed if it is sustainable for any reason. Buller, 806 S.W.2d at 226.(3)

 Allen was the only witness to testify at the turnover hearing. She testified that she
had established a revocable living trust and had transferred all of her property into the trust. She
stated she did not own any property outside of the assets transferred into the trust. Allen is the
trustee and has the power to buy and sell trust properties. Allen's three adult children are
beneficiaries of the trust. Included in the trust are payments of $7,000 Allen receives each month
in payment of the $915,323 note owed to her by the buyer of her house (the note), all of Allen's
personal possessions, a mutual fund account, her art collection, and three lots of real estate. Allen
stated her main source of support is from the note. She said each $7,000 monthly payment "goes
into the trust, and I--I use it as a checking account." She uses the trust as a checking account to
pay all bills for her personal needs. Allen stated that other than the trust, she had no other means
to pay the Bentzins' judgment. Allen signed the instrument creating the trust on January 21, 1999,
to be effective as of November 10, 1998. Allen testified as follows:


Bentzins' attorney: [I]t was your intent to transfer all of your property into the
trust, correct?


Allen: Yes.


Bentzins' attorney: To make sure there was nothing left.


Allen: To protect -- Yeah, for protection -- 


Bentzins' attorney: That's right.


Allen: -- for my children.



 On cross examination by her own attorney, Allen said that she had control over the
trust's checking account and that she believed "revocable" meant she had the authority to use the
trust. She stated she began working on the trust in 1994 or 1995, when she attempted to create
a trust by herself. She later dissolved her self-created trust and had an attorney draw up the
current trust documents. Allen said the only reason she created the trust is because she believed
it would protect her assets upon her death for the benefit of her children.

 While Allen is correct that she did not testify as to some of the findings recited in
the turnover order, that by itself does not mean that the turnover order must be struck down.(4) 
Allen testified that she had transferred all of her assets into the trust to protect them. She stated
she did not own any property outside of the trust. She stated she used the trust as a checking
account for her own expenses. While Allen did testify that she had tried to establish a trust long
before the entry of the judgment against her, the district court as the fact finder at the hearing was
not obligated to believe all of her testimony. Buller, 806 S.W.2d at 227. The district court could
reasonably have believed that Allen's use of the trust was an attempt to avoid her creditors. Allen
has not shown that the court abused its discretion in entering the turnover order. We overrule
Allen's second point of error. We affirm the trial court's judgment.



 

 J. Woodfin Jones, Justice

Before Justices Jones, Yeakel and Patterson

Affirmed

Filed: November 30, 2000

Do Not Publish


1. Sometime after the beginning of this suit, Allen sold lot twenty-four, which included a
house, for $915,323. 
2. Such language is commonly referred to as a "Mother Hubbard" clause. Mafrige v. Ross, 866
S.W.2d 590, 590 n.1 (Tex. 1993).
3. Allen cites Herschbach v. City of Corpus Christi, 883 S.W.2d 720 (Tex. App.--Corpus
Christi 1994, writ denied), for the proposition that a judgment unsupported by evidence cannot
stand. In Herschbach, the trial court stated that plaintiffs' counsel had conceded two causes of
action, but the evidence indicated and the appellate court held that no such concession had been
made. Id. at 734. However, Herschbach concerned a summary judgment, which is reviewed
under a different standard than are turnover orders. As noted above, a turnover order is reviewed
for an abuse of discretion and whether the order is supported by evidence is simply a factor to be
considered. Buller, 806 S.W.2d at 226; Parks, 957 S.W.2d at 668.
4. The turnover order states that Allen had refused to fully answer discovery propounded by
the Bentzins and refers to Travis County real property records. However, Allen did not testify
about discovery and the record from the hearing does not include any real property records. In
any event, those findings are not essential to the findings that Allen's transferring her property into
the trust was an attempt to avoid creditors and that Allen should be ordered to turnover assets to
the Bentzins. 


the
trustee and has the power to buy and sell trust properties. Allen's three adult children are
beneficiaries of the trust. Included in the trust are payments of $7,000 Allen receives each month
in payment of the $915,323 note owed to her by the buyer of her house (the note), all of Allen's
personal possessions, a mutual fund account, her art collection, and three lots of real estate. Allen
stated her main source of support is from the note. She said each $7,000 monthly payment "goes
into the trust, and I--I use it as a checking account." She uses the trust as a checking account to
pay all bills for her personal needs. Allen stated that other than the trust, she had no other means
to pay the Bentzins' judgment. Allen signed the instrument creating the trust on January 21, 1999,
to be effective as of November 10, 1998. Allen testified as follows:


Bentzins' attorney: [I]t was your intent to transfer all of your property into the
trust, correct?


Allen: Yes.


Bentzins' attorney: To make sure there was nothing left.


Allen: To protect -- Yeah, for protection -- 


Bentzins' attorney: That's right.


Allen: -- for my children.



 On cross examination by her own attorney, Allen said that she had control over the
trust's checking account and that she believed "revocable" meant she had the authority to use the
trust. She stated she began working on the trust in 1994 o