TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00034-CV







The Moody Foundation and John Cornyn, Attorney General of

the State of Texas, Appellants


v.



Estate of Shearn Moody, Jr., Deceased, Appellee







FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY


NO. 69,229, HONORABLE GUY HERMAN, JUDGE PRESIDING 







 The Moody Foundation ("Foundation") and the Attorney General appeal from a
probate court judgment ordering the Foundation to reimburse the estate of Shearn Moody, Jr.
("Estate") for legal fees and expenses incurred by Moody in a federal criminal proceeding and
a United States Tax Court case. We are presented with the question of whether a charitable trust
must reimburse a trustee for personal legal fees arising from his federal criminal prosecution for
fraud and a civil Internal Revenue Service action for acts of self-dealing. The Foundation
contends that the Estate is not entitled to reimbursement for any expenses incurred by Moody in
the criminal case or the tax case because Moody's conduct underlying the cases was not
reasonable and in good faith. We conclude that the Estate failed to carry its burden of establishing
that Moody's conduct was reasonable and in good faith and is therefore not entitled to
reimbursement of attorney's fees. We reverse the probate court judgment and render judgment
that the Estate take nothing.


BACKGROUND

 The facts of this case have been stipulated and are undisputed. The Foundation is
a Texas common law charitable trust created pursuant to the terms of a trust indenture executed
on August 22, 1942. The Foundation makes charitable grants in fields such as education,
religion, health, and the humanities. Three trustees control and manage the Foundation, and two
votes are required to approve a grant. Shearn Moody, Jr. served as a trustee from 1954 until his
removal in 1987 following his indictment by a federal grand jury for allegedly defrauding the
Foundation. Specifically, the government alleged that Moody applied his influence as a trustee
to direct grants to fictitious tax-exempt organizations that had clandestinely pledged, in return for
Foundation contributions, to subsidize Moody's litigation that followed from the collapse of an
Alabama insurance company that he founded. See United States v. Moody, 903 F.2d 321, 323
(5th Cir. 1990). 

 Following a three-month trial, Moody was convicted by a jury of seventeen counts
of mail and wire fraud arising out of grants made by the Foundation while he was a trustee. He
was sentenced to two five-year prison terms to run concurrently and was ordered to pay fines
totaling $500,000 and restitution of $1,300,000. The Fifth Circuit reversed the conviction,
dismissing two counts because of insufficient evidence and remanding the remaining fifteen counts
to the United States District Court for the Southern District of Texas for retrial. See id. at 334. 
On November 20, 1990, for reasons not set forth in the record, the district court dismissed the
fifteen counts against Moody that had been remanded.

 On November 10, 1987 and October 27, 1988, the Internal Revenue Service issued
deficiency notices to Moody totaling $5,465,895.56 based on allegations that, from 1983 to 1986,
he had committed various acts of self-dealing while serving as a Foundation trustee. The
allegations of self-dealing contained in the deficiency notices were based on the facts forming the
basis of Moody's federal criminal indictment, as well as other alleged facts. Moody filed a
petition with the United States Tax Court for a redetermination of the deficiency. Trial began on
May 17, 1993 and lasted nine days. On May 2, 1995, the tax court ruled that, of the total alleged
acts of self-dealing, which amounted to $5,815,409.56, Moody had engaged in self-dealing as to
acts involving $349,514, or 6.01% of the whole. See Moody v. Commission, 69 T.C.M. 2517
(1995). On June 5, 1996, Moody repaid the Foundation $349,514.

 Moody incurred legal fees and expenses of $1,033,007.63 in the federal criminal
proceeding and $225,292.85 in the tax court proceeding. Following his death in 1996, Moody's
estate sued the Foundation seeking reimbursement for all of the legal fees and expenses incurred
by Moody in the criminal case and 93.99% of the amount incurred by Moody in the tax case, a
total of $1,244,760.39. The Estate also sought $1,041,448.26 in interest charges on funds Moody
borrowed from his mother and brother to pay the foregoing legal fees and expenses.

 After a bench trial, the probate court ordered the Foundation to reimburse the
Estate $1,973,109.59. (1) This amount represented all of Moody's expenses in the criminal case,
93.99% of his expenses in the tax case, and the interest charges on the funds borrowed by Moody,
less interest owed by Moody to the Foundation on the self-dealing income. The probate court also
awarded the Estate $69,017.86 in attorney's fees related to this case.

 Following a request by the Foundation, the probate court entered findings of fact
and conclusions of law in support of its judgment. The court, citing Shear v. Gabovitch, (2) 685
N.E.2d 1168 (Mass. App. Ct. 1997), concluded that Moody's reimbursement was not dependent
upon his outright vindication in defending against allegations of wrongdoing, but rather should
be apportioned based on his percentage of "success." See id. at 1194. The court found that
Moody had acted reasonably and in good faith, and without misfeasance or malfeasance, as to
100% of the conduct alleged in the criminal case and 93.99% of the conduct alleged in the tax
case. 

 On appeal, the Foundation, joined by the Attorney General pursuant to Property
Code section 123.002, (3) argues that the Estate was not entitled to reimbursement for any of the
expenses incurred by Moody in the criminal case or the tax case. Specifically, appellants contend
that: (1) the Texas Trust Code (4) does not provide a proper basis for reimbursement; (2) the
evidence was legally and factually insufficient to establish a right to reimbursement; (3) the
Foundation's trust indenture does not entitle the Estate to reimbursement; and (4) the probate
court erred in awarding the Estate attorney's fees incurred in this case. 


DISCUSSION

 For the purposes of the Texas Trust Code, a "trust" is an express trust only. See
Tex. Prop. Code Ann. § 111.003 (West 1995). An "express trust" is defined as "a fiduciary
relationship with respect to property which arises as a manifestation by the settlor of an intention
to create the relationship and which subjects the person holding title to the property to equitable
duties to deal with the property for the benefit of another person." Id. § 111.004(4). The
fiduciary relationship exists between the trustee and the trust beneficiary, and the trustee must not
breach or violate this relationship. See Slay v. Burnett Trust, 187 S.W.2d 377, 387-88 (Tex.
1945); Restatement (Second) of Trusts § 170 cmt. a (1959); G. Bogert, Trusts and Trustees § 543,
at 217-18 (2d ed. rev. 1993). The duties of a trustee with respect to the administration of a
charitable trust (5) are the same as the duties of trustees of private trusts, except that the duties of
trustees of charitable trusts are ordinarily not owed to or enforceable by individual beneficiaries,
but are enforced by the Attorney General. See Restatement (Second) of Trusts § 379 cmt. a.

 A trustee owes a trust beneficiary an unwavering duty of good faith, fair dealing,
loyalty, and fidelity over the trust's affairs and its corpus. See Herschbach v. City of Corpus
Christi, 883 S.W.2d 720, 735 (Tex. App.--Corpus Christi 1994, writ denied) (citing Ames v.
Ames, 757 S.W.2d 468, 476 (Tex. App.--Beaumont 1988), modified, 776 S.W.2d 154 (Tex.
1989)). A trustee's fundamental duties include the use of the skill and prudence that an ordinary,
capable, and careful person would use in the conduct of his own affairs and loyalty to the trust
beneficiary. See Interfirst Bank Dallas, N.A. v. Risser, 739 S.W.2d 882, 888 (Tex.
App.--Texarkana 1987, no writ); Restatement (Second) of Trusts § 174. It is imperative that a
trustee, in his dealings with the trust property, not use the trust property, corpus, or income in
his own private business. See Slay, 187 S.W.2d at 387-88; Ames, 757 S.W.2d at 476. A trustee
commits a breach of trust not only where he violates a duty in bad faith, or intentionally although
in good faith, or negligently, but also where he violates a duty because of a mistake. See Republic
Nat'l Bank & Trust Co. v. Bruce, 105 S.W.2d 882, 885 (Tex. 1937); Ertel v. O'Brien, 852
S.W.2d 17, 21 (Tex. App.--Waco 1993, writ denied).

 A trust may be created for any purpose that is not illegal. See Tex. Prop. Code
Ann. § 112.031. Generally speaking, a trustee may incur expenses that are necessary to carry out
the purposes of the trust. See Restatement (Second) of Trusts § 188. For example, it is
appropriate for a trustee to incur expenses for costs in maintaining or defending a judicial
proceeding for the benefit of the trust estate, such as litigation to resist claims that may result in
a loss to the trust estate. See id.; see also 3 Scott on Trusts § 188.4 at 62 (4th ed. 1988). When
a trustee properly incurs expenses, he is entitled to reimbursement out of the trust estate for such
expenses. See Restatement (Second) of Trusts § 244. Where an expense is not properly incurred,
however, the trustee is not entitled to reimbursement from the estate. See id. § 245. A trustee
is not entitled to reimbursement for expenses that do not confer a benefit upon the trust estate,
such as those expenses related to litigation resulting from the fault of the trustee. See 3 Scott on
Trusts § 188.6 at 70; duPont v. Southern Nat'l Bank, 575 F. Supp. 849, 864 (S.D. Tex. 1983),
modified, 771 F.2d 874 (5th Cir. 1985).

 The Foundation first contends that the probate court erred in awarding the Estate
reimbursement based upon the Texas Trust Code. The Foundation argues that the Estate failed
to plead a right to reimbursement under the Trust Code because the attorney's fees in the criminal
case and the tax case were incurred because of Moody's own unreasonable conduct, not for the
benefit or protection of the trust or its property. The Estate contends that its first amended
original petition was sufficient to invoke the reimbursement provisions of the Trust Code.

 The Texas Trust Code authorizes the reimbursement of a trustee from trust
principal or income and specifically provides for awards of attorney's fees. Section 114.063,
entitled "General Right to Reimbursement," provides that "[a] trustee may discharge or reimburse
himself from trust principal or income or partly from both for . . . advances made for the
convenience, benefit or protection of the trust or its property" and for "expenses incurred while
administering or protecting the trust or because of the trustee's holding or owning any of the trust
property." Tex. Prop. Code Ann. § 114.063 (emphasis added). Section 114.064 of the Code
provides: "In any proceeding under this code the court may make such award of costs and
reasonable and necessary attorney's fees as may seem equitable and just." Id. § 114.064
(emphasis added).

 In its first amended original petition, the Estate advanced a cause of action under
section 233 of the Probate Code "for reimbursement and recovery of funds expended by the
deceased Shearn Moody, Jr., in successfully defending himself, through retained attorneys, in
criminal and civil actions brought against him by reason of his being a trustee of the Defendant
Moody Foundation." See Tex. Prob. Code Ann. § 233 (West Supp. 1999) (providing that
personal representatives of estates shall use ordinary diligence to collect all claims and debts due
the estate). The Estate alleged that Shearn Moody did not engage in willful misfeasance while
acting as a trustee and that he acted reasonably and in good faith. Therefore, the Estate argued,
it was entitled to recover reasonable and necessary attorney's fees and costs pursuant to section
114.064 of the Trust Code.

 The Foundation did not specially except to the Estate's first amended original
petition. When there are no special exceptions, a petition will be construed liberally in favor of
the pleader. See Roark v. Allen, 633 S.W.2d 804, 809 (Tex. 1982). The purpose of pleadings
is to define the issues at trial. See Garvey v. Vawter, 795 S.W.2d 741, 742 (Tex. 1990). All
pleadings shall be construed to do substantial justice. See Tex. R. Civ. P. 45; Howell v. Mauzy,
899 S.W.2d 690, 707 (Tex. App.--Austin 1994, writ denied). A petition is sufficient if it gives
fair and adequate notice of the facts upon which the pleader bases his claim. See Stone v.
Lawyer's Title Ins. Corp., 554 S.W.2d 183, 186 (Tex. 1977).

 The Estate alleged that it was entitled to reimbursement pursuant to section 114.064
of the Trust Code. Section 114.064 authorizes a court to award attorney's fees to trustees
involved "in any proceeding" under the Code. We conclude that the Estate's reliance on section
114.063's general right of reimbursement can be inferred from the petition as a whole. In
particular, we hold that the Estate asserted a general right to reimbursement for expenses incurred
because of Moody's holding or owning trust property. See Tex. Prop. Code Ann. § 114.063
(a)(2). Therefore, the Estate's first amended petition was sufficient to give the Foundation fair
notice that it would have to defend against a reimbursement claim as provided by the Trust Code. 
Because the Estate's petition can be construed to assert a cause of action under section
114.063(a)(2) of the Trust Code, we need not determine whether Moody's legal expenses
benefitted the trust in order to resolve the Foundation's first issue.

 Having concluded that the Estate's pleading served to initiate a proceeding under
the Trust Code, we must determine whether the probate court erred in awarding the Estate over
$1.9 million in attorney's fees and related costs. It is clear that under section 114.064, the grant
or denial of attorney's fees is within the sound discretion of the trial court. See Lyco Acquisition
1984 v. First Nat'l Bank, 860 S.W.2d 117, 121 (Tex. App.--Amarillo 1993, writ denied). We will
not reverse the trial court judgment unless there is a clear showing that the trial court abused its
discretion. See id. The test for abuse of discretion is whether the trial court acted unreasonably
or without reference to any guiding rules or principles. See Downer v. Aquamarine Operators,
Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).

 Under Texas law, a trustee may charge the trust for attorney's fees the trustee,
acting reasonably and in good faith, incurs defending charges of breach of trust. See Grey v. First
Nat'l Bank, 393 F.2d 371, 387 (5th Cir. 1968); duPont, 575 F. Supp. at 863; see generally 90
C.J.S. Trusts § 285 (1955); Rowland v. Moore, 168 S.W.2d 911, 916 (Tex. Civ. App.--Fort
Worth), rev'd on other grounds, 174 S.W.2d 248 (Tex. 1943). The Estate, as the plaintiff
seeking reimbursement from the Foundation, bore the burden in the probate court of establishing
that Moody was acting reasonably and in good faith when he engaged in the conduct underlying
the federal indictment and the tax court proceeding. The Estate acknowledges that to meet its
burden, it relied solely upon the published opinions of the Fifth Circuit and the United States Tax
Court. See United States v. Moody, 903 F.2d 321 (5th Cir. 1990); Moody v. Commission, 69
T.C.M. 2517 (1995). On appeal, the Estate urges that the Fifth Circuit's reversal of Moody's
conviction, coupled with the tax court's drastic reduction of the IRS's delinquency assessment,
provides sufficient evidence to support the probate court's findings that Moody acted reasonably
and in good faith. The Foundation contends that the evidence contained in the two opinions is both
legally and factually insufficient to support the probate court's findings.

 Findings of fact are reviewed for legal and factual sufficiency of the evidence by
the same standard used to review jury findings. See Westech Eng'g, Inc. v. Clearwater
Constructors, Inc., 835 S.W.2d 190, 195 (Tex. App.--Austin 1992, no writ). In reviewing a legal
sufficiency point, we consider all the evidence in the light most favorable to the Estate, indulging
every inference in its favor. See Associated Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d
276, 285-86 (Tex. 1998); Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994). 
If the appellant did not have the burden of proof on the challenged finding, the appellant must
show that no evidence supports the adverse finding; the challenge fails if more than a scintilla of
evidence supports the finding. See Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex.
1995); Seideneck v. Cal Bayreuther Assocs., 451 S.W.2d 752, 755 (Tex. 1970); In re King's
Estate, 244 S.W.2d 660, 661 (Tex. 1951). The evidence supporting a finding amounts to more
than a scintilla if reasonable minds could arrive at the finding given the facts proved in the
particular case. See Crye, 907 S.W.2d at 499; Moriel, 879 S.W.2d at 25.

 When reviewing a factual sufficiency challenge, we consider and weigh all the
evidence in support of and contrary to the findings. See Plas-Tex, Inc. v. United States Steel
Corp., 772 S.W.2d 442, 445 (Tex. 1989). The contested findings will be upheld unless we find
that the evidence is too weak to support the findings or that the weight of the evidence to the
contrary of the findings is so overwhelming as to render the judgment clearly wrong and
manifestly unjust. See Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); Garza v. Alviar, 395
S.W.2d 821, 823 (Tex. 1965); see also Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex.
1986). The appellate court may not substitute its judgment for that of the trier of fact simply
because it disagrees with the result. See Peco Constr. Co. v. Guajardo, 919 S.W.2d 736, 739
(Tex. App.--San Antonio 1996, writ denied).

 We first consider the Foundation's argument that there is insufficient evidence to
support the probate court's finding that Moody acted reasonably and in good faith as to 100% of
the conduct alleged in the criminal case. The Foundation argues that, although the Fifth Circuit
reversed Moody's conviction, the court found sufficient evidence existed to support conviction
on fifteen counts of mail and wire fraud and remanded the case to the district court for retrial. 
See United States v. Moody, 903 F.2d at 333. The Foundation contends that the fact that Moody
was never retried in no way establishes that he acted reasonably with respect to the actions that
brought about his indictment.

 In its opinion, the Fifth Circuit observed that, while serving as a Foundation
trustee, Moody was introduced to Vance Beaudreau and William Pabst, two disreputable
individuals affiliated with the Centre for Independence of Judges and Lawyers ("CIJL"). See id.
at 324. The CIJL, although purportedly dedicated to aiding citizens "oppressed" by the American
legal system, was actually involved in the promotion of fraudulent tax-avoidance schemes. For
a fee, wealthy taxpayers were established as "subsidiary foundations" of the CIJL. The taxpayer
would then "donate" his income to the CIJL, which would keep a percentage and "redonate" the
earnings back to the taxpayer through his individual subsidiary. The CIJL would then instruct the
taxpayer to finance all routine living expenses strictly through the subsidiary foundation, thereby
avoiding income taxation.

 The CIJL was also actively involved in the solicitation of fraudulent grants from
charitable trusts. See id. at 325. Beaudreau and Pabst persuaded Moody, who believed that the
loss of his insurance business and his personal bankruptcy were caused by a corrupt justice
system, that the CIJL shared his beliefs and would pursue projects to correct the injustice he
suffered. They told Moody that although the CIJL would not solicit Foundation funds directly,
it would arrange for its "subsidiaries" to submit grant applications for "worthy" projects. Three
"subsidiaries"--the Carlson Foundation, the Earl Foundation, and the Hamilton Law Institute--
submitted applications, each styled in the subsidiary's individual name.

 Moody allegedly lobbied the other Foundation trustees to approve the grant
applications submitted by these fictitious organizations, despite a dearth of information concerning
the merit, if any, of the projects. See id. The Carlson Foundation received $375,000 to finance
the publication of a jury manual. The Earl Foundation received $150,000 to study the dental
problems of the Comanche and Karankawa Indians and, separately, $450,000 to study the
relationship between criminal behavior generally and dental defects. The Hamilton Law Institute
received $500,000 to "research and disseminate information" about the constitutional right to a
jury trial. Members of the Foundation staff testified that because they were pressured by Moody
to "skirt traditional accounting practices," they failed to realize that the grantees were affiliated
with the CIJL and that the funds granted to the bogus projects were actually channeled to
Beaudreau and Pabst under the pretense that the redistribution was directed by Moody. See id.

 Moody was convicted of mail and wire fraud based upon these grants. He appealed
his conviction on several grounds, including the trial court's refusal to allow him to impeach the
veracity of hearsay declarants Beaudreau and Pabst or to present surrebuttal testimony. Although
the court reversed Moody's conviction on these grounds, it noted that Moody expressly challenged
only six of the seventeen counts in the indictment for evidentiary insufficiency. See id. at 333. 
Moody did not challenge the sufficiency of the evidence to support conviction on eleven counts
of mail and wire fraud. The Fifth Circuit concluded that of the six counts Moody challenged for
evidentiary insufficiency, the evidence was sufficient with respect to four counts. Specifically,
the court held that the evidence was sufficient to support a judgment of conviction for two counts
of mail fraud and two counts of wire fraud. See id. at 333-34.

 Having reviewed the Fifth Circuit's opinion concerning Moody's conduct
underlying the criminal case, we conclude that the evidence is insufficient to support the probate
court's finding that Moody acted reasonably and in good faith as to 100% of the conduct alleged. 
The Estate bears the burden of establishing that Moody's conduct was reasonable and in good
faith, and nothing in the Fifth Circuit's opinion satisfies this burden. The failure of the State to
ultimately convict Moody of mail and wire fraud does not establish that Moody's conduct as a
trustee was reasonable. The trustee must affirmatively establish that the conduct at issue was
reasonable. Moody was obligated to protect the trust property with the skill and prudence that
an ordinary, capable, and careful person would use in the conduct of his own affairs. See Risser,
739 S.W.2d at 888. The Fifth Circuit's opinion demonstrates that Moody's loyalty as a trustee
was compromised by his association with Beaudreau and Pabst. While we cannot state with
certainty whether Moody's breach of trust resulted from bad faith or merely negligent gullibility,
his conduct clearly falls short of the standard required of trustees. Thus, the weight of the
evidence is so contrary to the probate court's finding as to render the judgment clearly wrong and
manifestly unjust.

 The evidence is also insufficient to support the probate court's finding that Moody
acted reasonably and in good faith as to 93.99% of the conduct alleged in the tax case. The
United States Tax Court evaluated the grants for which Moody was indicted by the federal grand
jury, as well as numerous other grants and payments orchestrated by Moody while he was a
Foundation trustee, to determine whether Moody was liable for excise taxes under the Internal
Revenue Code for acts of self-dealing. See I.R.C. §§ 4941(a)(1), (a)(2), (b)(1); § 6684 (1989). 
Under the Internal Revenue Code, "self-dealing" includes "any direct or indirect" furnishing of
"goods, services, or facilities between a private foundation and a disqualified person" as well as
a "transfer to, or use by or for the benefit of, a disqualified person of the income or assets of a
private foundation." Id. § 4941(d)(1)(C), (E). A "disqualified person" is defined to include a
"foundation manager"; a "foundation manager" is further defined to include a trustee of a private
foundation. Id. § 4946(a)(1)(B), (b)(1). It is undisputed that Moody, as a Foundation trustee, was
a foundation manager, and as such, a disqualified person with respect to the Foundation. See
Moody v. Commission, 69 T.C.M. at 2528.

 Internal Revenue Code section 4941(a)(1) imposes upon a disqualified person an
excise tax equal to 5% of the amount involved in each act of self-dealing between the disqualified
person and the private foundation. See I.R.C. § 4941(a)(1). This is the "first tier" tax. See
Moody v. Commissioner, 69 T.C.M. at 2528. Subsection (b)(1) imposes a "second tier" tax on
a disqualified person equal to 200% of the amount involved in each act of self-dealing if the act
is not "corrected" (6) within the "taxable period." (7) I.R.C. § 4941(b)(1). If a tax is imposed on acts
of self-dealing under section 4941(a)(1), another tax equal to 2 1/2% of the amount involved in
each act of self-dealing is imposed by subsection (a)(2) if the foundation manager involved knew
that the act in issue was an act of self-dealing and that his participation in the act was willful and
without reasonable cause. See id. § 4941(a)(2). Finally, section 6684(2) imposes a penalty upon
a person who becomes liable for a tax under section 4941 for actions that are willful and flagrant,
and not due to reasonable cause. See id. § 6684(2). The penalty is equal to the amount of the tax
imposed under section 4941. See id.

 During the tax court proceeding, Moody bore the burden of establishing that he was
not liable for excise taxes under section 4941(a)(1) and (b)(1). See Moody v. Commissioner, 69
T.C.M. at 2528. The tax court found that Moody had engaged in fifteen acts of self-dealing that
he failed to correct before the mailing of the deficiency notices and imposed sanctions pursuant
to section 4941(a)(1) and (b)(1). (8) See id. at 2532-35. Of the fifteen acts, the tax court concluded
that seven were committed willfully and without reasonable cause and imposed additional
sanctions pursuant to sections 4941(a)(2) and 6684. See id. at 2536-37.

 The Estate may be reimbursed for legal expenses incurred by Moody in the tax case
if it establishes that Moody's conduct underlying the case was reasonable and in good faith. To
meet its burden, the Estate relies solely upon the opinion of the tax court. The court determined
that Moody did not personally benefit from most Foundation grants. Thus, the court concluded
that in most instances Moody had not engaged in self-dealing as defined by the Internal Revenue
Code. This conclusion does not establish that Moody's actions as a trustee were reasonable. 
Many of Moody's acts, while they may not have constituted self-dealing under the Internal
Revenue Code, cannot be considered reasonable conduct for a foundation trustee.

 For example, Moody, characterized by the tax court as a trusting, naive person,
"given to conspiracy theories," and not possessing "even an adequate business sense," used his
influence as a Foundation trustee to expedite the approval of grants to CIJL "subsidiaries." See
id. at 2524, 2525, 2531, 2536. Moody misrepresented to the Foundation that he knew the
principals of the Hamilton Law Institute. See id. 2523-24. Moody also assured a law firm
employed by the Foundation that there was no connection between Pabst and one of the
subsidiaries. See id. at 2525. Up to 90% of the funds granted by the Foundation to the
subsidiaries were funneled to Beaudreau and Pabst and their associates. See id. 2524-25.

 While Moody may not have personally, directly or indirectly, benefitted from these
transactions, his conduct was not shown to be reasonable. He breached his duty of loyalty as a
trustee by failing to use the skill and prudence of a reasonable person in administering the trust. 
See Ames, 757 S.W.2d at 476; Risser, 739 S.W.2d at 888; see also Ertel, 852 S.W.2d at 21. His
naivete and lack of business acumen resulted in the Foundation funding projects of dubious value. 
Where reasonable conduct is lacking, it is irrelevant that, for the most part, the tax court found
that Moody did not knowingly abuse the trust or act in bad faith. See Republic Nat'l Bank &
Trust Co., 105 S.W.2d at 885. Thus, the probate court erred in finding that Moody acted
reasonably and in good faith as to 93.99% of the conduct alleged in the tax court case.


CONCLUSION

 We conclude that, because the Estate failed to carry its burden that Moody's
conduct was reasonable, the probate court abused its discretion in awarding reimbursement for
the amounts detailed in the judgment, including attorney's fees in this case. We need not consider
the Foundation's remaining issue concerning the trust indenture. We reverse the judgment of the
probate court and render judgment that the Estate take nothing.



 

 Jan P. Patterson, Justice

Before Justices Jones, Kidd and Patterson

Reversed and Rendered

Filed: November 18, 1999

Do Not Publish

1. The probate court first notified the parties of its ruling by letter on September 30, 1998. 
The Estate argues that the letter, because it was signed by the probate court judge and specified
September 30 as the date of judgment, constituted the final judgment for purposes of appeal. The
Estate contends that, because the Foundation failed to perfect its appeal within thirty days of
September 30, this Court lacks jurisdiction to consider the Foundation's appeal. Finality "must
be resolved by a determination of the intention of the court as gathered from the language of the
decree and the record as a whole, aided on occasion by the conduct of the parties." Continental
Airlines, Inc. v. Keifer, 920 S.W.2d 274, 277 (Tex. 1996) (citing 5 Ray W. McDonald, Texas
Civil Practice § 27.4[a], at 7 (John S. Covell, ed., 1992 ed.)). The September 30 letter instructed
the Estate to submit an order to the probate court incorporating the court's ruling. The Estate
complied, and the court signed a final judgment on November 30, 1998. A court's letter to
counsel asking them to submit a draft of a final order shows that the letter is not intended as the
appealable order. See In re Colony Ins., 978 S.W.2d 746, 747 (Tex. App.--Dallas 1998, no pet.)
(citing Goff v. Tuchscherer, 627 S.W.2d 397, 398 (Tex. 1982)). The Foundation timely appealed
from the judgment signed on November 30; thus we have jurisdiction to consider the merits of
its appeal. 
2. In Shear, the life beneficiary of two trusts sought to remove two trustees and to assess
surcharges against them for losses caused by alleged breaches of their fiduciary duty. See 685
N.E.2d at 1171-72. The beneficiary succeeded in winning the removal of the trustees and in
recovering the bulk of the trustees' fees that they had improperly voted themselves. See id. at
1194. The trustees were successful in defending themselves against two principal claims of breach
of fiduciary duty. See id. The Massachusetts appeals court permitted the trustees to recover from
the trust attorney's fees related to the claims on which the trustees succeeded in defending their
proper administration of the trust. See id.
3. See Tex. Prop. Code Ann. § 123.002 (West 1995) ("For and on behalf of the interest of the
general public of this state in charitable trusts, the attorney general is a proper party and may
intervene in a proceeding involving a charitable trust."). As the interests of the Foundation and
the Attorney General do not diverge, for convenience, we will refer only to the Foundation.
4. See Tex. Prop. Code Ann. §§ 111.001-115.017 (West 1995 & Supp. 1999).
5. "'Charitable trust' means a charitable entity, a trust the stated purpose of which is to benefit
a charitable entity, or an inter vivos or testamentary gift to a charitable entity." Tex. Prop. Code
Ann. § 123.001 (West Supp. 1999).
6. With respect to acts of self-dealing, the terms "correction" and "correct" mean undoing the
transaction to the extent possible, but in any case placing the private foundation in a financial
position not worse than that in which it would be if the disqualified person were dealing under the
highest fiduciary standards. See I.R.C. § 4941(e)(3) (1989).
7. "Taxable period" means the period beginning with the date on which the act of self-dealing
occurs and ending on the earliest of: (1) the date of mailing a notice of deficiency, (2) the date
on which the tax imposed by subsection (a)(1) is assessed, or (3) the date on which correction of
the act of self-dealing is completed. See I.R.C. § 4941(e)(1)(A)-(C).
8. Several of the instances of self-dealing discussed by the tax court involve the grants that
formed the basis of Moody's criminal prosecution. For example, an attorney employed by CIJL
submitted bills totaling $95,385 for work on behalf of Moody's various legal interests, including
Moody's bankruptcy. The attorney billed at a rate of $200 to $300 per hour and was paid by the
CIJL from Foundation funds funneled through either the Earl Foundation or the Hamilton Law
Institute. See Moody v. Commission, 69 T.C.M. 2517, 2525, 2534 (1995). Foundation moneys
totaling $92,818 were also distributed in this manner to Moody's personal attorney, Jane Ford,
who worked for Moody on legal matters related to the collapse of his insurance company. See
id. at 2525-26, 2534. Finally, the CIJL paid a former United States congressman $15,000 to
interview new bankruptcy counsel for Moody and to borrow money for Moody from Moody's
brother, who was solvent and a Foundation trustee. See id. at 2526, 2534.


ate court first notified the parties of its ruling by letter on September 30, 1998. 
The Estate argues that the letter, because it was signed by the probate court judge and specified
September 30 as the date of judgment, constituted the final judgment for purposes of appeal. The
Estate contends that, because the Foundation failed to perfect its appeal within thirty days of
September 30, this Court lacks jurisdiction to consider the Foundation's appeal. Finality "must
be resolved by a determination of the intention of the court as gathered from the language of the
decree and the record as a whole, aided on occasion by the conduct of the p