NUMBER 13-09-00004-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


BANK OF AMERICA, N.A., Appellant,


v.
 


DWIGHT EISENHAUER, INDIVIDUALLY AND AS

INDEPENDENT EXECUTOR OF THE ESTATE OF

LORENE BELCHER WALTER, DECEASED, Appellee.

 


On appeal from County Court at Law No. 1 


of Nueces County, Texas.


 


MEMORANDUM OPINION



Before Justices Rodriguez, Garza, and Benavides


Memorandum Opinion by Justice Rodriguez



 Appellee Dwight Eisenhauer, individually and as independent executor of the estate
of Lorene Belcher Walter, deceased, sued appellant Bank of America, N.A. (Bank of
America) to recover $27,497.67 Bank of America paid to Jo Ann Day. Each party filed a
motion for traditional and no-evidence summary judgment. The trial court granted
Eisenhauer's motion and denied Bank of America's motion. A jury trial was held on
Eisenhauer's request for attorney's fees. (1) The trial court entered a final judgment awarding
Eisenhauer, individually and as independent executor of Lorene's estate, damages and
attorney's fees. By six issues, which we reorganize as four, Bank of America contends (1)
the trial court erred in granting summary judgment in favor of Eisenhauer because he failed
to state the grounds upon which the motion was made; (2) the trial court erred in denying
Bank of America's no-evidence motion for summary judgment because Eisenhauer
provided no evidence to support various elements of his claims; (3) the trial court erred in
denying Bank of America's traditional motion for summary judgment because Eisenhauer,
as executor of Lorene's estate, was estopped from pursuing his claim; and (4) the trial
court erred by failing to require Eisenhauer to segregate his attorney's fees' evidence. We
affirm, in part, reverse and render, in part, and reverse and remand, in part.

I. Background (2)

 In June 2003, Lorene and her husband, H.W., renewed a certificate of deposit (the
Walter CD) account at Bank of America. The certificate was titled "H. W. Walter and
Lorene Walter ITF Jo Ann Day and Dwight Eisenhauer." H.W. died in June 2004. Lorene,
as co-owner of the Walter CD and the surviving spouse, became the sole owner of the
Walter CD. Upon the death of Lorene, any remaining sums were to be paid in equal
shares to Day and Eisenhauer.


 On July 16, 2004, Day, a long-time employee of Eisenhauer and co-executor with
Eisenhauer of H.W.'s estate, presented H.W.'s death certificate to Bank of America. Day
requested that Bank of America's employee, Joyce Sheen, distribute funds from the Walter
CD to Day and Eisenhauer even though Lorene was still alive. Sheen complied with Day's
request and issued a cashier's check in the amount of $27,497.67 to Day. A second
cashier's check in an equal amount was issued and mailed to Eisenhauer. At Day's
request, Sheen closed the Walter CD account. Bank of America acknowledges that it
made an error when it distributed these funds to Eisenhauer and Day. Eisenhauer
returned the check issued to him and, pursuant to his power of attorney, opened a new
account in Lorene's name with himself as the only beneficiary. Eisenhauer deposited his
check into that account.

 Bank of America phoned Day to inform her of the error. Day responded that she
would have her attorney contact Sheen. Bank of America also contacted Day regarding
the money through three letters written between July 28, 2004 and August 27, 2004. On
August 16, 2004, Day's attorney tendered $5,000 to Bank of America. On November 17,
2004, Bank of America's legal department wrote to Day's attorney, acknowledging that Day
had offered to pay Bank of America part of the money as a lump sum with the remaining
amounts to be paid in installments. In its November 17 letter, Bank of America rejected
Day's offer and advised her that it would consider legal remedies, including litigation, if
payment was not received within ten days from the date of the letter.

 On August 27, 2004, Beverly Wynone Belcher Ringland was appointed temporary
guardian of the person and the estate of Lorene, and her appointment was continued and
confirmed on October 22, 2004. (3) On or about February 2, 2005, Ringland delivered a
document to Bank of America, which recited the following: (1) the Walter CD designated
Day and Eisenhauer as payable-on-death beneficiaries; (2) H.W. died on June 20, 2004;
(3) Bank of America mistakenly permitted Day to withdraw funds from the Walter CD
account and distributed, in error, the proceeds in equal shares to Day and Eisenhauer; (4)
Eisenhauer returned his distribution to Bank of America; (5) Day retained her distribution
despite Bank of America's demands; (5) Ringland was appointed guardian of the person
and estate of Lorene; and (6) "Ringland, in her fiduciary capacity as guardian for [Lorene],
desires that Day retain the funds received by her and that [Bank of America] withdraw its
demand on Day to return funds to the Account." In addition to the above recitals, the
Ringland document contained the following paragraph titled "Agreement":

 Therefore, in consideration of forbearance from recovery efforts by the Bank
against Day, Ringland, in her fiduciary capacity as guardian for Walter,
agrees to indemnify, defend, protect, and hold Bank of America harmless
from and against any and all claims, demands, losses, costs, expenses,
obligations, liabilities, and damages, including reasonable attorney's fees and
costs, that Bank of America may incur or suffer in connection with or
resulting from the Withdrawal.


Following receipt of this document, Bank of America returned the $5,000 check to Day's
attorney and took no further actions to collect the money from Day.

 On March 7, 2005, Eisenhauer replaced Ringland as court-appointed guardian for
Lorene's person and estate. Lorene died on May 2, 2005, and on May 25, 2005,
Eisenhauer became independent executor of Lorene's estate. Eisenhauer filed suit
against Bank of America on September 13, 2005, asserting claims for breach of contract,
violation of state law, (4) negligence, gross negligence, and breach of fiduciary duty;
Eisenhauer requested actual damages, punitive damages, and attorney's fees. In his
petition, Eisenhauer alleged that one of the assets of Lorene's estate "was a cause of
action against Bank of America for wrongfully, illegally and negligently closing [the Walter
CD account] . . . and wrongfully and illegally paying one-half of such funds to a third party
not entitled to such funds." Bank of America and Eisenhauer filed motions for traditional
and no-evidence summary judgment. The trial court granted summary judgment for
Eisenhauer and denied Bank of America's motion. After a jury determined the amount of
Eisenhauer's attorney's fees, the trial court entered final judgment awarding Eisenhauer
actual damages of $27,797.67 and attorney's fees of $61,000. This appeal ensued.

II. Standard of Review

A. Summary Judgment Generally

 Ordinarily, when both sides move for summary judgment and the trial court grants
one motion and denies the other, the Court reviews the motions and all summary judgment
evidence and renders the judgment that the trial court should have rendered. SAS Inst.,
Inc. v. Breitenfeld, 167 S.W.3d 840, 841 (Tex. 2005) (per curiam); Barrand, Inc. v.
Whataburger, Inc., 214 S.W.3d 122, 129 (Tex. App.-Corpus Christi 2006, pet. denied)
(citing Comm'rs Court v. Agan, 940 S.W.2d 77, 81 (Tex. 1997)). "However, we may also
reverse the judgment and remand the cause when we find that course proper." K3 Enters.
v. McDaniel, 8 S.W.3d 455, 458 (Tex. App.-Waco 2000, pet. denied) (citing Coker v.
Coker, 650 S.W.2d 391, 392 (Tex. 1983) (providing that the property settlement agreement
that the trial court found unambiguous was found ambiguous by the supreme court and the
cause was remanded for the trier of fact to resolve the ambiguity); Sosa v. Williams, 936
S.W.2d 708, 711 n.1 (Tex. App.-Waco 1996, writ denied) (concluding that remand was
proper when competing motions were based on different premises)).

 In reviewing motions for summary judgment, issues not expressly presented to the
trial court by written motion or response to a motion for summary judgment cannot be
considered as grounds either to affirm or reverse the trial court's judgment. Tex. R. Civ.
P. 166a(c); McConnell v. Southside I.S.D., 858 S.W.2d 337, 341 (Tex. 1993); see Mercier
v. Sw. Bell Yellow Pages, Inc., 214 S.W.3d 770, 774 (Tex. App.-Corpus Christi 2007, no
pet.) (op. on reh'g). "A motion must stand or fall on the grounds expressly presented in the
motion." McConnell, 858 S.W.2d at 341.

B. Traditional Summary Judgment

 Our review of the trial court's grant or denial of a traditional motion for summary
judgment is de novo. See Ortega v. City Nat'l Bank, 97 S.W.3d 765, 771 (Tex.
App.-Corpus Christi 2003, no pet.) (op. on reh'g). The moving party bears the burden of
showing both no genuine issue of material fact and entitlement to judgment as a matter of 
law. Tex. R. Civ. P. 166a(c); Ortega, 97 S.W.3d at 772. In deciding whether there is a
genuine issue of material fact, the Court takes evidence favorable to the non-movant as
true. Ortega, 97 S.W.3d at 772. All reasonable inferences benefit and all doubts are
resolved in favor of the non-movant. Id. Summary judgment for a defendant is proper if
the defendant disproves at least one element of each of the plaintiff's claims or
affirmatively establishes each element of an affirmative defense to each claim. Id. A non-movant has the burden to respond to a traditional summary judgment motion if the movant
conclusively: (1) establishes each element of its cause of action or defense; or (2) negates
at least one element of the non-movant's cause of action or defense. Id.

 In a traditional motion for summary judgment, rule 166a(c) requires that the movant
"shall state the specific grounds" upon which the motion is made. Tex. R. Civ. P. 166a(c);
see McConnell, 858 S.W.2d at 341; Red Roof Inns, Inc. v. Murat Holdings, L.L.C., 223
S.W.3d 676, 688 (Tex. App.-Dallas 2007, pet. denied) (op. on reh'g). "In determining
whether the grounds are expressly presented, reliance may not be placed on . . . the
summary judgment evidence." McConnell, 858 S.W.2d at 341. A trial court cannot grant
a summary judgment motion on grounds not presented in the motion. See id.

C. No-Evidence Summary Judgment

 A no-evidence motion for summary judgment asserts that there is no evidence of
one or more essential elements of a claim on which the adverse party will bear the burden
of proof at trial. Tex. R. Civ. P. 166a(i); Scripps Tex. Newspapers, L.P. v. Belalcazar, 99
S.W.3d 829, 840 (Tex. App.-Corpus Christi 2003, pet. denied). This type of motion must
specifically identify the elements of the claim for which there is no evidence. Meru v.
Huerta, 136 S.W.3d 383, 386 (Tex. App.-Corpus Christi 2004, no pet.). Conclusory
motions or general no-evidence challenges to an opponent's case are not appropriate
under this rule. Id. at 387. Under rule 166a(i), "[t]he court must grant the [no-evidence]
motion unless the respondent produces summary judgment evidence raising a genuine
issue of material fact." Tex. R. Civ. P. 166a(i); see Jackson v. Fiesta Mart, Inc., 979
S.W.2d 68, 70 (Tex. App.-Austin 1998, no pet.). The movant has no burden to attach any
evidence to a no-evidence motion for summary judgment. Tex. R. Civ. P. 166a(i); Ortega,
97 S.W.3d at 772. The non-movant bears the entire burden of producing evidence to
defeat a no-evidence motion for summary judgment. Tex. R. Civ. P. 166a(i). When the
non-movant fails, the "court must grant the motion." Id.

 In reviewing a no-evidence motion, the Court applies the same legal-sufficiency
standard as it does when reviewing a directed verdict. Belalcazar, 99 S.W.3d at 840. 
"'Like a directed verdict, then, the task of the appellate court is to determine whether the
[non-movant] has produced any evidence of probative force to raise fact issues on the
material questions presented.'" Id. (quoting Jackson, 979 S.W.2d at 70). To raise a
genuine issue of material fact, the non-movant must bring forth more than a scintilla of
probative evidence on the challenged element. See Jackson, 979 S.W.2d at 70; see also
Ortega, 97 S.W.3d at 772. "Less than a scintilla of evidence exists when the evidence is
'so weak as to do no more than create a mere surmise or suspicion' of a fact." Moore v.
K Mart Corp., 981 S.W.2d 266, 269 (Tex. App.-San Antonio 1998, pet. denied) (quoting
Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983)). "Conversely, more than a
scintilla exists when the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" Ortega, 97 S.W.3d at 772 (quoting Transp.
Inc. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994)).III. AnalysisA. Eisenhauer's Traditional Motion for Summary Judgment (5)

 By its first issue, Bank of America contends that the trial court erred when it granted
summary judgment in favor of Eisenhauer because Eisenhauer did not state the grounds
upon which his traditional motion was based. Eisenhauer's motion for summary judgment
recited a "Statement of Undisputed Facts," set out general summary judgment standards,
listed his summary judgment evidence which he attached and incorporated into his motion,
and prayed for relief. Eisenhauer now asserts that his motion was sufficient and gave fair
notice of the grounds on which it was based because it: (1) was eight pages long; (2) was
accompanied by 229 pages of summary judgment evidence; (3) laid out Bank of America's
erroneous closure of the Walter CD account and Bank of America's refusal to return the
$27,497.67 to Lorene's estate; and (4) prayed for recovery of $27,497.67, "representing
the amount of funds owed by Bank of America to Mrs. Walter before her death." 
Eisenhauer argues that, thus, the ground for summary judgment was recovery of the
$27,497.67 that Bank of America owed Lorene because it admittedly violated the terms of
her certificate of deposit, constituting a breach of contract claim. We are not persuaded
by Eisenhauer's argument.

 Nowhere in his motion did Eisenhauer expressly state the above grounds or reasons
which he now argues are sufficient to entitle him to summary judgment as a matter of law. 
See Tex. R. Civ. P. 166a(c); McConnell, 858 S.W.2d at 341; Mercier, 214 S.W.3d at 774. 
The undisputed facts Eisenhauer provided were not expressly set out as grounds or
reasons that would entitle Eisenhauer to summary judgment. See McConnell, 858 S.W.2d
at 341. Eisenhauer cannot rely on his recitation of facts, and he may not place his reliance
on the attached summary judgment evidence to provide the grounds for the motion. See
id. Therefore, because Eisenhauer's traditional motion for summary judgment did not
expressly present grounds for which summary judgment could have been granted, we
conclude that the trial court erred in granting Eisenhauer's summary judgment on any
basis, including his breach of contract claim. See id.; see also Tex. R. Civ. P. 166a(c);
Mercier, 214 S.W.3d at 774. We sustain Bank of America's first issue. (6)

B. Bank of America's No-Evidence Motion for Summary Judgment


 In its second issue, Bank of America asserts that the trial court erred when it denied
its no-evidence motion for summary judgment. Bank of America specifically challenges the
trial court's denial on the basis that there was no evidence of the following: (1) a non-contractual legal duty; and (2) Eisenhauer's individual standing to bring suit. (7) See Tex. R.
Civ. P. 166a(i); Meru, 136 S.W.3d at 386; Belalcazar, 99 S.W.3d at 840.

 1. Non-Contractual Legal Duty

 Bank of America asserts that the trial court erred in denying its no-evidence motion
because Eisenhauer provided no evidence of a non-contractual legal duty or a fiduciary
duty owed by Bank of America. Under rule 166a(i), the trial court should have granted
Bank of America's motion unless Eisenhauer produced summary judgment evidence
raising a genuine issue of material fact. See Tex. R. Civ. P. 166a(i); LaCour v. Lankford
Co., 287 S.W.3d 105, 109 (Tex. App.-Corpus Christi 2009, pet. denied) ("Once a no
evidence motion for summary judgment is filed, the non-moving party must present
evidence raising an issue of material fact as to the elements of the claim challenged in the
motion.") (citing Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex. 2006)). 
Eisenhauer, however, filed no response to Bank of America's motion. Eisenhauer did file
a document titled "PLAINTIFF'S OBJECTIONS TO EVIDENCE [FILED] IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT" and now urges this Court to
consider it as his response. We decline to do so. Moreover, even were we to construe it
as a response, nowhere in that document does Eisenhauer respond to, or even mention,
Bank of America's alleged non-contractual legal duty or fiduciary duty.

 Eisenhauer also argues that, because there are competing motions for summary
judgment, this Court should review the motions and all the summary judgment evidence. 
See SAS Inst., 167 S.W.3d at 841; Agan, 940 S.W.2d at 81. However, even assuming that
all summary judgment evidence is properly considered in our analysis of Bank of America's
no-evidence motion, we nevertheless conclude that Eisenhauer has failed to raise a
genuine issue of material fact regarding the duty element of his non-contractual causes of
action. See Tex. R. Civ. P. 166a(i); Jackson, 979 S.W.2d at 70; see also Schlueter v.
Schlueter, 975 S.W.2d 584, 589 (Tex. 1998) ("[R]ecovery of punitive damages requires a
finding of an independent tort with accompanying actual damages") (quoting Twin City Fire
Ins. Co. v. Davis, 904 S.W.2d 663, 665 (Tex. 1995) and citing Amoco Prod. Co. v.
Alexander, 622 S.W.2d 563, 571 (Tex. 1981) (explaining in a breach of contract action that
even if the breach is malicious, intentional, or capricious, that punitive damages are not
recoverable without a tort)).

 2. Eisenhauer's Individual Standing to Bring Suit

 Bank of America next asserts by its second issue that the trial court erred in denying
its no-evidence motion as to Eisenhauer, individually, because Eisenhauer produced no
evidence of his individual standing to sue. We agree.

 "It is settled in Texas that the personal representative of the estate of a decedent
is ordinarily the only person entitled to sue for the recovery of property belonging to the
estate." (8) Frazier v. Wynn, 472 S.W.2d 750, 752 (Tex. 1971); see Tex. Prob. Code Ann.
§ 233A (Vernon 2003). In this case, it is undisputed that Eisenhauer was the executor of
the estate and, as Lorene's personal representative, had standing to sue in that capacity
for recovery of any property belonging to Lorene's estate. (9) See Frazier, 472 S.W.2d at
752. However, Eisenhauer filed no response to Bank of America's no-evidence motion
challenging his individual standing to sue. And, as we reasoned above, even assuming
that all evidence is properly considered in our analysis of Bank of America's no-evidence
motion, we nevertheless conclude that Eisenhauer has failed to raise a genuine issue of
material fact regarding his individual standing to sue. See Tex. R. Civ. P. 166a(i); Jackson,
979 S.W.2d at 70.

 3. Conclusion

 Based on the above analysis, we conclude the trial court erred when it denied Bank
of America's no-evidence motion for summary judgment as to Eisenhauer's negligence,
gross negligence, and fiduciary duty claims and as to Eisenhauer's standing to sue as an
individual. We sustain Bank of America's second issue.

C. Bank of America's Traditional Motion for Summary Judgment


 By its third issue, Bank of America contends that Eisenhauer, as independent
executor of Lorene's estate, has no standing to sue. Bank of America argues that its
disbursement of the funds in question was expressly affirmed by Day, Lorene's guardian
at that time; thus, no claim survived Lorene's death. Bank of America pleaded numerous
affirmative defenses to the survival of the claim, including estoppel, ratification, waiver,
release, and accord and satisfaction. It also pleaded failure to satisfy a condition
precedent as an affirmative defense. In its traditional motion for summary judgment, Bank
of America argued that these named defenses, inter alia, provided bases for granting its
motion. Now, on appeal, Bank of America asserts only estoppel and failure to satisfy a
condition precedent to support its contention that the trial court erred in denying its
traditional motion for summary judgment.

 1. Estoppel

 Bank of America bases its estoppel defense on the document it received from
Ringland, who was, at that time, guardian of Lorene's person and estate. In the document,
Ringland recited that she "desire[d] that Day retain the funds received by her and that the
Bank withdraw its demand on Day to return funds to the Account."

 In its traditional motion for summary judgment and in its response to Eisenhauer's
motion, Bank of America presented the following estoppel argument:

 Estoppel arises where, by the fault of one, another is induced to
change his or her position for the worse. Herschbach v. City of Corpus
Christi, 883 S.W.2d 720, 736 (Tex. App.-Corpus Christi 1994, writ denied). 
The elements of an estoppel defense are (1) a false representation or
concealment of material facts, (2) made with knowledge, actual or
constructive, of those facts, (3) with the intention that it should be acted on,
(4) to a party without knowledge or means of obtaining knowledge of the
facts, (5) who detrimentally relies on the representations. Schroeder v. Tex.
Iron Works, Inc., 813 S.W.2d 483, 489 (Tex. 1991)[, overruled on other
grounds by In re United Servs. Auto. Ass'n, 53 Tex. Sup. Ct. J. 485, 2010
Tex. LEXIS 282 (Tex. Mar. 26, 2010)].


 As stated above, through the Guardian, the Decedent expressly
instructed Bank of America to cease and desist from any attempts to recover
the subject funds from Day and expressly stated the Decedent's desire that
Day retain the subject funds. . . . Bank of America relied upon the
instructions of the Guardian to its detriment. The Decedent is thus estopped
from bringing suit against Bank of America for any and all acts relating to the
early distribution.

 Now, on appeal, Bank of America argues that Lorene--through Eisenhauer--is
estopped from bringing suit against Bank of America for any and all acts related to the
early distribution. Specifically, Bank of America claims to have reasonably relied on
Ringland's instructions and asserts the following argument in support of its contention that
its reliance is conclusively established:

 The Indemnity Agreement unequivocally provides that Ringland, as
court[-]appointed fiduciary, desires that Day--an individual whom both Mr.
and Mrs. Walter affirmatively selected as their payable on death
beneficiary--retain the very funds they contracted to convey to her and that
Bank of America withdraw its demand on Day to return those funds. Bank
of America relied, to its detriment by promptly returning a $5,000.00 check. 
Eisenhauer came forward with no summary judgment evidence to refute
Bank of America's reliance evidence or the reasonableness of relying on a
notarized instrument executed by the court appointed guardian of Mrs.
Walter. Thus, the point should be concluded in Bank of America's favor. At
a minimum, a fact issue was raised as to the reasonableness of Bank of
America's reliance and summary judgment for Eisenhauer is improper.

 Summary judgment is proper if a defendant, Bank of America in this case,
affirmatively establishes each element of its affirmative defense. See Ortega, 97 S.W.3d
at 772. Bank of America's argument relies on cases where the estoppel defense arises
"where by fault of one, another has been induced to change his position for the worse." 
Herschbach, 883 S.W.2d at 736. In its summary judgment motion and its response, Bank
of America set out all of the elements of an estoppel defense that it must establish. See
Schroeder, 813 S.W.2d at 489. However, in the summary judgment proceeding below and
now on appeal, Bank of America argues only that it conclusively established detrimental
reliance, the fifth element of estoppel. See id. Bank of America does not assert that it
affirmatively established each of the remaining elements of the affirmative defense of
estoppel; that a false representation or concealment of material facts was made with
knowledge, actual or constructive, of those facts, with the intention that it should be acted
on, to a party without knowledge or means of obtaining knowledge of the facts. See id.;
Ortega, 97 S.W.3d at 772. Therefore, even were we to conclude that Bank of America
established the reliance element, the trial court did not err in denying Bank of America's
traditional motion for summary judgment based on the asserted estoppel defense because
Bank of America did not address the remaining elements. See Ortega, 97 S.W.3d at 772.

 2. Condition Precedent

 Bank of America also contends that the following provision, found in its September
1, 2003 Deposit Agreement and Disclosures (Deposit Agreement), created a condition
precedent that required Eisenhauer to give notice of any alleged problem or unauthorized
transaction within sixty days of Bank of America sending a statement or otherwise making
it available:

 Examining Statements and Reporting Problems


 You agree to promptly and carefully review your statement and any
accompanying items. You must report problems or unauthorized
transactions to us immediately, by calling the number for Customer Service
on your statement. . . . You agree that 60 days after we send a statement
(or otherwise make it available) is the maximum reasonable amount of time
for you to review your statement and report any problem or unauthorized
transaction related to a matter shown on the statement. In addition if you do
not notify us in writing of suspected problems or unauthorized transactions
within 60 days after we send your statement, or otherwise make it available,
you agree that you cannot make a claim against us relating to the unreported
problems or unauthorized transactions.


 A condition precedent is defined as a condition either to the formation of the contract
or to an obligation or a duty to perform arising under an existing agreement. Hohenberg
Bros. Co. v. George E. Gibbons & Co., 537 S.W.2d 1, 3 (Tex. 1976); Ford v. City State
Bank of Palacios, 44 S.W.3d 121, 139 (Tex. App.-Corpus Christi 2001, no pet.); see
Basse Truck Line, Inc. v. First State Bank, 949 S.W.2d 17, 21-22 (Tex. App.-San Antonio
1997, writ denied) (explaining that a condition precedent limits a claim because it requires
an aggrieved party to first perform a specified act before commencing an action).

 In its argument on appeal, Bank of America asserts that failure to satisfy a condition
precedent is an affirmative defense and that the following establishes that defense: (1) the
plain terms of the Deposit Agreement provide that account holders must promptly notify
Bank of America of any errors, forgeries, unauthorized signatures, or unauthorized
withdrawals; (2) it is undisputed that no such timely, written notice was provided; (3) the
Deposit Agreement states that quarterly statements are provided for savings accounts; and
(4) a federal tax form 1099 was provided at the end of 2004. (10) Bank of America asserts
that Eisenhauer is precluded from asserting liability against it for its early distribution to
Day. Bank of America urges that either its affirmative defense of failure to satisfy a
condition precedent is established as a matter of law or, at the very least, there is a fact
issue precluding summary judgment in favor of Eisenhauer.

 As a threshold matter, we address Bank of America's reference to Eisenhauer's
alleged failure to satisfy a condition precedent as an affirmative defense. Bank of America
urged in its motion for traditional summary judgment and now on appeal that the evidence
established this affirmative defense as a matter of law; thus, the trial court erred in denying
its traditional motion for summary judgment. See Tex. R. Civ. P. 166a(c); Ortega, 97
S.W.3d at 772; see also Tex. R. Civ. P. 54 (providing for the defense of failure to satisfy
a condition precedent), 94 (identifying affirmative defenses). However, failure to satisfy
conditions precedent is not an "affirmative defense" on which Bank of America bore the
burden of proof. See Lidawi v. Progressive County Mut. Ins. Co., 112 S.W.3d 725, 729 n.1
(Tex. App.-Houston [14th Dist.] 2003, no pet.).


 Texas Rule of Civil Procedure 54 provides that after a defendant has specifically
denied the performance of the condition precedent, the plaintiff is required to prove the
performance of only those conditions that the defendant has specifically denied. Tex. R.
Civ. P. 54. The effect of rule 54 is to shift the burden of pleading to the defendant, not the
burden of proof; the burden of both pleading and proof of performance of all conditions
precedent to recovery remains with the plaintiff. Trevino v. Allstate Ins. Co., 651 S.W.2d
8, 11 (Tex. App.-Dallas 1983, writ ref'd n.r.e.). As the Houston Court and the Dallas Court
have explained:

 A condition precedent to the right to maintain an action must be performed
and "the fact of performance or excuse of nonperformance must be alleged
and proved in order to warrant a recovery." Southwestern Associated
Telephone Co. v. City of Dalhart, 254 S.W.2d 819, 825 (Tex. Civ.
App.-Amarillo 1952, writ ref'd n.r.e.). When a plaintiff avers generally that
all conditions precedent have been performed, he is required to prove the
performance of only those conditions precedent specifically denied by the
defendant. The effect of this rule is to shift the burden of pleading to the
defendant, but not the burden of proof, when the plaintiff has made a general
allegation that all conditions precedent have been performed.

Lidawi, 112 S.W.3d at 729 n.1 (quoting Trevino, 651 S.W.2d at 11). Therefore, when a
defendant's liability on a contract depends on the performance or happening of a condition
precedent, the plaintiff, not the defendant, must allege and prove that the condition has
happened or has been performed or that there was a waiver of the condition precedent. 
See Parkview Gen. Hosp., Inc. v. Eppes, 447 S.W.2d 487, 490 (Tex. Civ. App.-Corpus
Christi 1969, writ ref'd n.r.e.); see also Hurst v. Rush, 514 S.W.2d 472, 475 (Tex. Civ.
App.-Beaumont 1974, no writ). In the absence of the occurrence or performance of such
a condition precedent, there can be no breach of contract. Hurst, 514 S.W.2d at 475;
Eppes, 447 S.W.2d at 490-91.

 Thus, we are not persuaded by Bank of America's affirmative-defense argument. 
Even assuming that this notification provision requiring written notice of a problem reflected
in a written statement received by a customer is a condition precedent under the facts of
this case, Bank of America's traditional motion for summary judgment arguing that it
established the affirmative defense of failure of a condition precedent was not
appropriate. (11)

 3. Conclusion

 Based on the above analysis, we conclude that the trial court did not err in denying
Bank of America's traditional motion for summary judgment as to the estoppel affirmative
defense and the defense of failure to meet a condition precedent. We overrule Bank of
America's third issue.

IV. Disposition

 We reverse the trial court's order denying Bank of America's no-evidence motion for
summary judgment on Eisenhauer's negligence, gross negligence, and breach of fiduciary
duty claims and render judgment in favor of Bank of America on said claims. We reverse
the trial court's order denying Bank of America's no-evidence motion for summary
judgment on claims filed by Eisenhauer individually and render judgment in favor of Bank
of American on said claims. In all other respects, we affirm the trial court's order denying
Bank of America's traditional and no-evidence motion for summary judgment.

 Furthermore, we reverse the trial court's order granting summary judgment in favor
of Eisenhauer, as independent executor of the estate of Lorene Belcher Walters, and its
judgment awarding damages for breach of contract and remand for proceedings consistent
with this opinion. Because we reverse and remand the underlying claim for breach of
contract, we also reverse and remand the trial court's award of attorney's fees and court
costs.


 NELDA V. RODRIGUEZ

 Justice


Delivered and filed the 

15th day of July, 2010.
1. The jury found reasonable attorney's fees to be $31,500 for preparation and trial, $15,000 for an
unsuccessful appeal to the court of appeals by Bank of America, and $15,000 for an unsuccessful appeal by
Bank of America to the Texas Supreme Court. The trial court also awarded pre- and post-judgment interest
and $1,409.90 representing costs and fees incurred by Eisenhauer during the course of the lawsuit.
2. The facts set out in the background section are undisputed.
3. The August 27, 2004 order appointing Beverly Wyone Belcher Ringland temporary guardian of the
person and estate of Lorene Belcher Walter and the October 22, 2004 order continuing and confirming her
appointment provided, inter alia, that Ringland "shall have . . . the power and duty to preserve all claims of the
Ward." 
4. Specifically, Eisenhauer claimed that Bank of America violated the express provisions of section 447
of the Texas Probate Code. See Tex. Prob. Code Ann. § 447 (Vernon 2007).
5. Eisenhauer's motion was also titled as a no-evidence motion for summary judgment. See Tex. R.
Civ. P. 166a(i) (stating that a party may be entitled to summary judgment on the ground that there is "no
evidence of one or more essential elements of a claim or defense on which the adverse party would have the
burden of proof at trial" (emphasis added)). However, a no-evidence summary judgment is not available to
a plaintiff arguing that his own claims are conclusively established by the evidence, as in this case. See
Thomas v. Omar Invs., Inc., 156 S.W.3d 681, 684 (Tex. App.-Dallas 2005, no pet.) (finding that the
no-evidence summary judgment motion was improperly granted "[b]ecause the Carpet Mills of America
defendants' motion for summary judgment did not specifically state which elements of the Thomases' claims
lacked supporting evidence and relied on the affirmative defense of disclaimer as a basis for no-evidence
summary judgment"); Nowak v. DAS Inv. Corp., 110 S.W.3d 677, 680-81 (Tex. App.-Houston [14th Dist.]
2003, no pet.) (explaining that a party with the burden of proof at trial cannot bring a no-evidence
summary-judgment motion).
6. Having sustained Bank of America's first issue, we need not address Bank of America's fourth issue
challenging the trial court's award of attorney's fees on the basis that Eisenhauer did not segregate his
attorney's fees' evidence. See Tex. R. App. P. 47.1
7. Bank of America also asserts it claimed that there was no evidence of Bank of America's breach of
any non-contractual legal "duty," proximate cause, or damages. We disagree. Bank of America's motion did
not specifically state that there was no evidence of breach, proximate cause, or damages for the non-contract
claims. See Meru v. Huerta, 136 S.W.3d 383, 386 (Tex. App.-Corpus Christi 2004, no pet.); see also Tex.
R. Civ. P. 166a(i); Scripps Tex. Newspapers, L.P. v. Belalcazar, 99 S.W.3d 829, 840 (Tex. App.-Corpus
Christi 2003, pet. denied). The trial court could not have granted Bank of America's motion as to these
elements because Bank of America did not expressly present these issues in its motion. McConnell v.
Southside I.S.D., 858 S.W.2d 337, 341 (Tex. 1993).


 We also note that Bank of America does not challenge the trial court's denial of its no-evidence motion
as to Eisenhauer's state-law violation claim.
8. The term "[p]ersonal representative . . . includes executor, independent executor, administrator,
independent administrator, temporary administrator, together with their successors." Tex. Prob. Code Ann.
§ 3(aa) (Vernon Supp. 2009).
9. There are exceptions to the general rule; however, none apply here. See, e.g., Shepherd v. Ledford,
962 S.W.2d 28, 31 (Tex. 1998) (setting out that an heir at law can maintain a suit for the recovery of property
belonging to the estate when he alleges and proves there is no administration pending and none is
necessary); Frazier v. Wynn, 472 S.W.2d 750, 752 (Tex. 1971) (same); Mayhew v. Dealey, 143 S.W.3d 356,
371 (Tex. App.-Dallas 2004, pet. denied) (providing "that heirs may bring suit when the personal
representative cannot, or will not, bring the suit or when the personal representative's interests are
antagonistic to those of the estate") (citing Chandler v. Welborn, 294 S.W.2d 801, 806 (Tex. 1956); Burns v.
Burns, 2 S.W.3d 339, 342 (Tex. App.-San Antonio 1999, no pet.)).
10. Interestingly, Bank of America brings to our attention that there is conflicting evidence in the record
creating fact issues regarding whether Eisenhauer received a copy of the Deposit Agreement. Eisenhauer
states, in his sworn statement, that he "never had and never saw a copy of the [Deposit Agreement]," while
the trial court's October 22, 2004 order appointing Ringland temporary guardian of Lorene provides that
"[c]omplete records of such accounts have been maintained and are still being maintained by Dwight
Eisenhauer." Furthermore, although Bank of America's motion for summary judgment indicates that the
Deposit Agreement was incorporated into the Walter CD, copies of the Walter CD that are in the appellate
record are illegible.


 Moreover, Bank of America argues only that the Deposit Agreement states that quarterly statements
are provided for savings accounts. It provides no record citation to a quarterly statement provided to
Eisenhauer, and we find no such document in the record. And the 1099 tax form referenced by Bank of
America, apparently in support of its argument that a statement was provided, identifies only 2004 interest
income from the Walter CD.
11. Bank of America contends by a sub-issue that the trial court abused its discretion when it struck
Bank of America's summary judgment exhibits B and C, both titled "Deposit Agreement and Disclosures"
(Deposit Agreement) and dated October 1, 2002 and September 1, 2003, respectively. Bank of America
describes the Deposit Agreement as the underlying written contract upon which Eisenhauer's claims depend. 
Nonetheless, even were we to conclude that the trial court abused its discretion when it struck the exhibits,
see Creative Thinking Sources, Inc. v. Creative Thinking, Inc., 74 S.W.3d 504, 514 (Tex. App.-Corpus Christi
2002, no pet.) (providing that the admission or exclusion of summary judgment evidence is reviewed for abuse
of discretion), the error was harmless because the same Deposit Agreements were attached as exhibits B
and C to Bank of America's response to Eisenhauer's motion for summary judgment. See Tex. R. App. P.
44.1(a)(1). Further, as Bank of America acknowledges, Eisenhauer did not object to these exhibits, and there
is no order striking them. Thus, the Deposit Agreement was part of the summary judgment evidentiary record
in the trial court and is now part of the appellate record. We overrule this sub-issue.


 Bank of America also notes that the Deposit Agreement provides that, should liability be found, Bank
of America's maximum liability is the amount of the "unauthorized withdrawal" and that it is "not liable to [the
depositor] for special or consequential losses or damages of any kind, including . . . attorneys' fees incurred
by you." However, this argument was not made to the trial court and, thus, is not before us in this appeal. 
See McConnell, 858 S.W.2d at 341.